1  YURI MIKULKA, SBN 185926
   (ymikulka@sycr.com)
2  SARAH S. BROOKS, SBN 266292
   (sbrooks@sycr.com)
3  BRADLEY E. MARRETT, SBN 288079
   (bmarrett@sycr.com)
4  STRADLING YOCCA CARLSON & RAUTH
   660 Newport Center Drive, Suite 1600
5  Newport Beach, CA  92660-6422
   Telephone:  (949) 725-4000
6  Facsimile:  (949) 725-4100

7  Attorneys for Plaintiff and
   Counter-defendant SPORT DIMENSION, INC.
8
9                  UNITED STATES DISTRICT COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
11                     WESTERN DIVISION

12 | SPORT DIMENSION, INC., a | CASE NO. 2:14-cv-00438-BRO-MRW |
   | California Corporation, | |
13 | | Hon. Beverly O'Connell |
   | Plaintiff, | Courtroom: 14 |
14 | | |
   | THE COLEMAN COMPANY, | **SPORT DIMENSION, INC.'S** |
15 | INC., a Delaware Corporation, | **OPENING CLAIM CONSTRUCTION** |
   | | **BRIEF** |
16 | Defendants. | |
17 | THE COLEMAN COMPANY, | **Claim Construction Hearing:** |
   | INC., a Delaware Corporation, | |
18 | | Date:  November 17, 2014 |
   | Counter-claimant, | Time:  1:30 p.m. |
19 | | |
   | vs. | |
20 | | |
   | SPORT DIMENSION, INC., a | **PUBLIC REDACTED VERSION** |
21 | California Corporation, | |
22 | Counter-defendant. | |
23
24
25
26
27
28

Stradling Yocca
Carlson & Rauth
LAWYERS
NEWPORT BEACH

3

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

1

## TABLE OF CONTENTS

2 Table of Authorities ...................................................................................... 5

3 I.      INTRODUCTION ............................................................................... 7

4 II.     BACKGROUND ................................................................................. 9

5 III.    LEGAL AUTHORITY ..................................................................... 12

6      A.    Claim Construction Is Required to Factor Out Functional Features .......... 13

7         1.    The Armbands are Functional (*See* Exhibit A, No. 1) ............................ 14

8         2.    The Armband Attachment and Placement are Functional (*See* Exhibit A,
          No. 2 ....................................................................................... 18
9
          3.    The Tapered Configuration of the Armbands Is Functional (*See* Exhibit
10        A, No. 3) ................................................................................. 19

11        4.    The Tapered Configuration of the Side Torso is Functional ................... 20

12     B.    The Applicant's Prosecution Disclaimers During Patent Prosecution
          Narrow the Scope of the D'714 Patent ............................................... 21
13
          1.    Arm Band Attachments (*See* Exhibit A, No. 5) ................................ 22
14
          2.    Arm Band Edges (*See* Exhibit A, ¶ No. 6) .................................... 22
15
          3.    Arm Band Tapering (*See* Exhibit A, ¶ No. 7) ................................ 23
16
          4.    No Vertical Edges (*See* Exhibit A, ¶ No. 8) .................................. 23
17
          5.    Top Front Torso (*See* Exhibit A, ¶ No. 9) .................................... 23
18
   IV.    CONCLUSION ................................................................................. 24
19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF
LITIOC/2104589v8/102566-0002

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Page(s)**

CASES

*180s Inc. v. Gordini Inc.*,
    699 F. Supp. 2d 714 (D. Md. 2010) ....................................................... 11

*Egyptian Goddess Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ............................................................... 11

*Fortinet, Inc. v. SRI Int'l, Inc.*,
    2013 U.S. Dist. LEXIS 151835 (N.D. Cal. Oct. 22, 2013) ............................ 12

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
    162 F.3d 1113 (Fed. Cir. 1998) ............................................................. 11

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc) ................................................. 11

*Moose Mountain Toymakers Inc. v. Majik, Ltd.*,
    2011 WL 3626067 (D.N.J. Aug 12, 2011) ............................................... 11

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ....................................................... 11, 12

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008) ................................................... 12

*Rehrig Pacific Co. v. Norseman Plastics Ltd. Inc.*,
    2003 U.S. Dist. LEXIS 27566 (C.D. Cal., Sept. 3, 2003) (Selna, J.) ............... 12

*Renishaw PLC v. Marposs Societa'per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ............................................................. 11

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ............................................................. 11

*Southwall Techs. Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ............................................................... 12

*Standard Oil Co. v. American Cyanamid Co.*,
    774 F. 2d 448 (Fed. Cir. 1985) ............................................................. 12

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2104589v8/102566-0002

*Sun-Mate Corp. v. Koolatron Corp.,*
   2011 WL 3322597 (C.D. Cal. Aug. 1, 2011) ..................................................... 11

*Ventana Med. Sys. v. Biogenex Labs., Inc.,*
   473 F.3d 1173 (Fed. Cir. 2006) ........................................................................ 20

*Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.,*
   No., CV 13-00734, 2013 U.S. Dist. LEXIS 159256 (C.D. Cal. Nov. 5,
   2013) .................................................................................................................. 12

STATUTES

35 U.S.C. § 112 ................................................................................................9, 10, 21

35 U.S.C. § 171 ....................................................................................................... 6, 11

OTHER AUTHORITIES

Fed.R.Civ.P. 30(b)(6) ................................................................................................. 8

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

6

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

# I.    INTRODUCTION

Defendant Sport Dimension, Inc. ("Sport Dimension") submits this opening brief on Claim Construction of Coleman's design patent, D623,714 (D'714 Patent). This case involves a patent directed to a Personal Flotation Device ("PFD") with armbands, *i.e.*, a life vest with arm floats.

Sport Dimension is a Los Angeles-based company that offers water sports product such as wetsuits, PFDs, body boards and sea scooters for brands such as Body Glove and Sea Doo.  In 2008, Defendant and Counter-Plaintiff The Coleman Company ("Coleman"), a subsidiary of a multi-billion dollar conglomerate Jarden Corporation, took over the operations of a company Stearns, Inc., thereby expanding its primarily camping and outdoor product line to include PFDs.  In so doing, Coleman dusted off a rejected utility patent application directed to a PFD invented by a Stearns employee Ralph Steger, and refashioned it as an overly broad design patent.  Coleman now tries to use this overbroad design patent to prevent competitors from offering alternative options to consumers.  Any protection afforded to Coleman's D'714 Patent, however, is limited because key features of the Patent are functional in nature and not ornamental; furthermore, Coleman disclaimed and limited the scope of the protected features during the prosecution.

*First,* because patent law protects only "ornamental" designs under 35 U.S.C. § 171, any functional aspects must be "factored out" when a design patent is construed and an infringement analysis is conducted.  Here, the patent prosecution history, the testimony of inventor Mr. Steger, and declaration of an industry expert all confirm that the armbands and associated parts are necessary, functional aspects that are required for the intended use of the product the D'714 Patent was based upon.  Hence, these features must be "factored out" and excluded from the protected elements of the D'714 Patent when the design compared to the accused device.

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

*Second*, during the patent prosecution of the D'714 Patent and the ancestor utility patent application, Coleman disclaimed certain elements of its patents. These prosecution disclaimers were made to get around the PTO's rejections of the submitted applications.  A claim construction is required to narrow the scope of D'714 Patent accordingly.

Sport Dimension's proposed construction of the D'714 Patent finds full support in the claim, drawings, prosecution history and the Applicant's admissions therein.  It is also supported by the deposition testimony of the inventor Ralph Steger, opinions of expert Susan Balistreri (who has over 35 years of experience in the PFD industry), and the applicable industry standards that the device was specifically designed (indeed required) to meet.

By contrast, Coleman simply refuses to construe the D'714 Patent. Incredibly, Coleman refuses to even acknowledge the interpretations disclaimed during patent prosecution, stating merely that claim construction is unnecessary. In other words, Coleman's construction seeks exclusive rights over basic, overly broad ideas for the design of a PFD.  A judicial claim construction is necessary to properly limit the patent to its authorized scope.  Overbroad protection of design philosophy and general design concepts, which are inherent in Coleman's claimed design, is not only legally impermissible under patent law but also violates basic norms by granting unwarranted monopoly protection and prohibiting fair competition.

Claim construction is necessary to avoid waste of judicial resources and prejudicial confusion by the jury.  The Court's guidance as to which of the design's elements are functional will narrow the focus of the non-infringement analysis to only those elements that are properly patented and protected.  The Court's guidance as to which elements have been disclaimed during the prosecution history will assist in clarifying and defining the elements that are actually claimed by the patent.  In fact, with the Court's clear guidance on the functional, disclaimed, and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

1    protected features of the D'714 Patent, this matter may be resolved in a motion for

2    summary judgment or in a streamlined trial, thus preserving judicial resources.

3    **II.    BACKGROUND**

4         The case involves an allegation by Coleman that Sport Dimension's child

5    PFD, the Body Glove Child PFD, infringes on Coleman's D'714 Patent.[1]

6         In 2006, the inventor Ralph Steger conceived the design for the D'714

7    Patent.[2]  Coleman, which acquired the patent file from Stearns, concedes that Mr.

8    Steger is the only person "known to have been involved in the conception and

9    development of the design covered by the D'714 patent."[3]

10   ██████████████████████████████████████████████████████████

11   ███████████████████████████████

12        It is undisputed that the Puddle Jumper is designed to be U.S. Coast Guard

13   ("USCG") approved.[5]  Indeed, compliance with the standards of USCG and

14   Underwriters' Laboratory ("UL"), which conducts testing for USCG approval, is

15   required for PFD.[6]

16        Around May 2007, USCG approval was granted and a UL file was issued

17   for the Puddle Jumper.[7]  The UL files detail the approved specification of the

18   design, materials, pattern layout, and performance requirements of the product.[8]

19   Here, the product was approved to be used as a "flotation device" and "swim

20   device" and the design had to meet the specification of the UL file.[9]

---

[1] Mikulka Decl., ¶¶ 4-5; Ex. C and D.
[2] Mikulka Decl., ¶¶ 19, 15, Exs. Q; Ex. M.
[3] *Id.* Ex. Q.
[4] ████████████████████████████████████
     ████████████████████████████████
     ████████████████████████████████████
     ██
[8] Mikulka Decl., ¶ 18, Ex. O.
[9] *See* Mikulka Decl., ¶ 18, Ex. O; Balistreri Decl 15-20.
[9] *Id.* at Coleman00000651.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

1    In its marketing materials and during internal meetings, Coleman highlights
2 USCG approval as one of its key features of the Puddle Jumper.[10]
3    On May 12, 2009, ███████████████████████████
4 ████████████████████, Coleman applied for a design patent on the device
5 with the United States Patent & Trademark Office ("PTO").[11]
6    Prior to the issuance of the D'714 Patent, Mr. Steger and Stearns applied for
7 a utility patent on Puddle Jumper ("Steger utility patent application"), publication
8 no. US2008/0160849 A1.[12]
9    The Steger utility patent application and the D'714 Patent were both titled
10 "Personal Flotation Device" ██████████████████████
11    The Steger utility patent application cited various improvements over prior
12 art, including the use of foam armbands instead of inflated armbands, connection
13 of the armbands to the torso, and a tapered configuration of the armbands.[14]
14    On December 17, 2008, the PTO issued a final rejection of the Steger utility
15 patent application stating that it was unpatentable and obvious over prior art.[15]
16    On May 12, 2009, Coleman submitted a design patent application that
17 served as a continuation of the Steger utility patent application.[16]
18    On January 14, 2010, the USPTO rejected the design patent application
19 under 35 U.S.C. § 112 as indefinite and nonenabling.[17]
20    In response, Coleman submitted a response and replacement drawings that
21 amended the original drawings.[18]

22 [10] *See Id.,* ¶ 20; Ex. R (Coleman000626-630); *Id.*, ¶ 22; Ex. S (Coleman's internal
23 marketing study at Coleman 0000406-407).
[11] *Id.,* ¶ 13; Ex. K at Coleman0000330-339.
24 [12]
25 ████████████████████████████████████████
26 ████████████████████████████████████████

27 [15] *See Id.,* ¶¶ 7-9, 14; Ex. F-G, L.
[16] *See Id.,* ¶¶ 12-13; Exs. J at Coleman0000247; Ex. K.
28 [17] *See Id.,* ¶ 11; Ex. I.

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach                                     10
SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF
LITIOC/2104589v8/102566-0002

1    On September 14, 2010, the PTO issued the D'714 Patent.[19]

2    The Complaint on this matter was filed in January 2014.

3    The parties have now exchanged two sets of discovery and documents and

4    Sport Dimension has taken three depositions, including the deposition of the

5    inventor, Ralph Steger.[20]

6    The accused product, Sport Dimension's Body Glove Child PFD, is a PFD

7    with attached armbands.  Unlike the Puddle Jumper, it is designed to look like a

8    traditional life vest with a vest-like torso and coverage in the shoulder, upper body

9    and back.[21]

10

11    **Coleman/ Puddle Jumper PFD**          **Sport Dimension /Body Glove PFD**

12

13
   
14

15

16

17

18
   
19

20

21

22

23

24
   Mikulka Decl., ¶¶ 3-4, Exs. C-D
25

26

27    [18] *See Id.,* ¶ 12; Ex. J.
      [19] *Id.,* ¶ 3, Ex. A.
      [20] *Id.,* ¶24.
28    [21] *See Id.,* ¶ 5; Ex. D.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

11

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

1    **III.**    **LEGAL AUTHORITY**

2        35 U.S.C. § 171 limits design patent protection to invention of "any new,

3 original and ornamental design for an article of manufacture."

4        Claim construction is a matter of law for the Court.[22] Here, claim

5 construction is important to distinguish the generalized design concepts, which are

6 not protected, from "new, original and ornamental design for an article of

7 manufacture," which are protected.[23] Claim construction is also important to

8 interpret the drawings so they cover what was actually invented and what the

9 inventor intended them to cover.[24] In design patent cases, claim construction is

10 appropriate and provides useful guidance to the jury on the following issues:

11 (1) distinguishing between ornamental features and features that are purely

12 functional; and (2) prosecution disclaimers, in other words, "assessing and

13 describing the effect of any representations that may have been made in the course

14 of the prosecution history".[25]

15        Because design patent law protects only "ornamental" designs under 35

16 U.S.C. § 171, any functional aspects must be "factored out" when a design patent

17 is construed and infringement analysis is conducted.[26]

18        Moreover, a prosecution disclaimer, a statement made by the applicant

19 during patent prosecution, may limit the scope of protection provided by the

20

21

22 [22] *Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc); *Sun-Mate Corp. v. Koolatron Corp.*, 2011 WL 3322597 at *3 (C.D. Cal.

23 Aug. 1, 2011) ("claim construction is a question of law for the court"); *180s Inc. v. Gordini Inc.*, 699 F. Supp. 2d 714, 717 n. 2 (D. Md. 2010) (same); *Moose*

24 *Mountain Toymakers Inc. v. Majik, Ltd.*, 2011 WL 3626067, at *2 (D.N.J. Aug 12, 2011) ("First, the design patent must be properly construed, as a matter of law.").

25 [23] See 35 U.S.C. § 171; *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997)

26 [24] *See Renishaw PLC v. Marposs Societa'per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

27 [25] *See OddzOn Prods. v. Just Toys*, 122 F.3d 1396 (Fed. Cir. 1997); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113 (Fed. Cir. 1998).

28 [26] *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

12

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

1   resulting patent.[27]   During claim construction, "the prosecution history (or file

2   wrapper) limits the interpretation of claims so as to exclude any interpretation that

3   may have been disclaimed or disavowed during prosecution in order to obtain

4   claim allowance."[28]   The prosecution history can also be "invaluable for

5   demonstrating the inventor's understanding of the claims and checking 'whether

6   the inventor limited the invention in the course of prosecution, making the claim

7   scope narrower than it would otherwise be.'"[29]

8       **A.      Claim Construction Is Required to Factor Out Functional**

9              **Features**

10          Where, as here, a design contains both functional and non-functional

11   elements, the scope of the claim must be construed in order to identify the non-

12   functional aspects of the design as shown in the patent."[30]   "A design is deemed to

13   be functional 'when the appearance of the claimed design is dictated by the use or

14   purpose of the article.'"[31]   The function of a particular element may be explained in

15   a related utility patent specification and is relevant to the determination of whether

16   the design features in a related design patent is functional or ornamental.   *See*

17   *Rehrig Pacific Co. v. Norseman Plastics Ltd. Inc.,* 2003 U.S. Dist. LEXIS 27566,

18   *18 (C.D. Cal., Sept. 3, 2003) (Selna, J.) (holding that defendant met its burden of

19   establishing evidence that the design elements are functional and not ornamental as

20

21

---

22   [27] *Southwall Techs. Inc. v. Cardinal IG Co.,* 54 F.3d 1570 (Fed. Cir. 1995)
(preventing the patentee from arguing an interpretation because the argument was
23   inconsistent with its position during prosecution); *Standard Oil Co. v. American
Cyanamid Co.,* 774 F. 2d 448, 452-453 (Fed. Cir. 1985).
     [28] *Standard Oil Co. v. American Cyanamid Co.,* 774 F. 2d 448, 452-453 (Fed. Cir.
24   1985).
     [29] *Rambus Inc. v. Hynix Semiconductor, Inc.,* 569 F. Supp. 2d 946 (N.D. Cal. 2008)
25   (*quoting Phillips,* 415 F.3d at 1317.);  *Fortinet, Inc. v. SRI Int'l, Inc.,* 2013 U.S.
Dist. LEXIS 151835 (N.D. Cal. Oct. 22, 2013).
26   [30] *OddzOn Prods. v. Just Toys,* 122 F.3d 1396, 1405 (Fed. Cir. 1997).
     [31] *Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.,* No., CV 13-00734, 2013 U.S.
27   Dist. LEXIS 159256 *10-11 (C.D. Cal. Nov. 5, 2013) (finding certain elements of
the cosmetic case functional and not ornamental and therefore not protected under
28   the design patent and could not form the basis for an infringement action.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

13
SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF
LITIOC/2104589v8/102566-0002

1   evidenced by the functional qualities attributed to these characteristics in the utility

2   patents).

3       Here, overwhelming evidence, including the D'714 patent, the file history,

4   the inventor testimony, expert opinions and Coleman's marketing materials and

5   admissions, confirm that the armbands and the associated parts are dictated by the

6   function of the device and are not ornamental.

7       **1.      The Armbands are Functional (*See* Exhibit A, No. 1)**

8       The armbands are integral to the claimed design because, simply put, the

9   PFD that is the subject matter of the D'714 Patent cannot perform as intended

10  without the armbands.  This is clear in the patent history, inventor testimony,

11  Coleman's marketing materials, and is confirmed by an industry expert.  Hence,

12  the armbands are functional and not ornamental.

13      **a.          Patent History Cites the Need for Armbands**

14      The functionality of the armbands is apparent from the patent history of the

15  Steger utility patent application that precedes the D'714 Patent.  The patent

16  application makes it clear that the invention is a PFD with armbands: "[t]his

17  invention relates generally to a personal flotation device and more particularly to *a*

18  *personal flotation device having armbands*."[32]

19      The patent application states that "the present invention addresses the

20  problems associated with the prior art devices and provides for a personal flotation

21  device with a retention member for *operatively connecting armband flotation pads*

22  *about the wearer*."[33]  It explains the inherent safety problems with PFDs without

23  armbands.[34]  It then teaches the utility of armbands for stability: "locating the

24  flotation around the upper arms of the child, away from the center of gravity of the

---

25  [32] Mikulka Decl., ¶ 6, Ex. E at SD0000481.

26  [33] *Id.*

27  [34] *Id.* at SD0000484 ("Since head movement changes the center of gravity
    substantially for a person in the water, proximity of the flotation material to the
    center of gravity of the wearer can make the device unstable.  Forward or sideways
    movement of the head can shift the center of gravity sufficiently to roll the wearer
    face down.").

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

14

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

child maintains stability and maximizes freeboard so the head movements are less likely to result in unwanted face down positions."[35]  The application also cites various improvements over prior art, including the use of foam armbands instead of inflated armbands, connection of the armbands to the torso, and tapered configuration of the armbands and torso.[36]  Hence, the utility of the invention is as described in the patent application: a PFD with armbands that optimizes safety and utility.

In fact, the utility of armbands with PFDs was so well known in the art that the PTO ultimately rejected the application as unpatentable.[37]  In particular, the PTO explained that the invention was obvious over prior art, including the expired Kierner patent, which too was directed to a PFD with a torso pad, back attachment, "and with armbands" that "taper to be narrower under the armpits of the user."[38]

### b.    Inventor Designed An "Armband" PFD

The inventor Ralph Steger, who Coleman concedes is "the only person known to have been involved in the conception and development of the design covered by the D'714 patent" also confirmed the importance of the armbands.[39]  Highlighting their significance, Mr. Steger stated his invention is otherwise known as



[35] *Id.,* SD000485-486.
[36] *Id.*
[37] *Id.,* ¶¶ 7, 14; Ex. F, L (Steger utility patent file history at 0000057); *Id.* 8, Ex. G, Kierner patent at Fig. 4.
[38] *Id.,* ¶ 7, Ex. F at 0000057 (emphasis added); *see Id.* 8; Ex. G (Kierner, Fig. 4. At Coleman0000161).
[39] *See* Mikulka Decl., ¶ 19, Ex. Q.
[40] *Id.,* at ¶¶ 18:20-19:5.
[41] *Id.,* at ¶ 18:14-19.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

15

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF
LITIOC/2104589v8/102566-0002

1 [REDACTED]

2 [REDACTED]

3 [REDACTED]

4 [REDACTED] and that this was a requirement of

5 Stearns:

> A. … The armbands that I worked on were to try to take advantage of the
> good aspects of armbands, the -- the flotation stability characteristics of
> them, but to make them fit within the rigid requirements that the UL
> Standard 1123 dictated [that the old armbands could not meet].[43]

Achieving USCG approval significantly influences the design of a PFD
product: the product must be designed to meet rigorous industry standards and
follow a specific UL file; together these requirements dictate the design,
dimensions, and materials of the PFD, among other things. [44]  In fact, once
approval is obtained, the product design and manufacturing must stay within the
UL file criteria that define the precise design, dimensions, cutting patterns,
labeling, materials, and performance standards.[45]

Here, [REDACTED]—one year
before Coleman applied for the design patent; the D'714 Patent is based on the
same design.[46]  Here, [REDACTED]

19 [REDACTED]

20 [REDACTED]

---

42 [REDACTED]
43 [REDACTED]

O [REDACTED]

45 [REDACTED]
46 [REDACTED]
47 *Id.*, ¶ 18, Ex. P (UL File at Coleman0000651).

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2104589v8/102566-0002

█████████████████████████████████   Therefore, the
Puddle Jumper, the product on which the D'714 Patent is based, cannot meet its
intended purpose without armbands and must in fact include armbands if it is to be
usable as a USCG-approved PFD.

### c.   Expert Opinion That The Device Cannot Function Without Armbands

Ms. Balistreri, who has over 35 years of experience in designing,
developing, and manufacturing PFDs, opined that the armbands are integral for the
intended use of the device, and the device cannot function without them.[49]  Ms.
Balistreri opined that the armbands are necessary for a device of this type to
provide balance buoyancy necessary to make up for the small torso called out in
the design.[50]  She opined that without the armbands, the claimed design could not
meet the minimum buoyancy requirement to keep the wearer afloat or to meet
applicable industry standards.[51]

Indeed, without the armbands, what would remain is a piece of foam with a
strap and buckle; such a product would fail to keep the wearer afloat—the essential
purpose of any PFD.[52]  In this case of course, the claimed design was more than a
basic PFD—it was USCG and UL approved, *i.e.*, it was designed to meet the
rigorous USCG and UL standards, and comply with the UL file, something that
Coleman proudly markets and cannot do without the armbands.[53]  In sum, the
armbands are integral to the intended use of the device; therefore, they are
functional and not ornamental.

---

[48] *Id.* (UL File at 850-685); Balistreri Decl., ¶¶15-19.
[49] *See* Balistreri Decl.
[50] *Id.* at ¶¶ 22-24.
[51] *Id.*
[52] *Id.*, ¶ 22, Ex. T (http://en.wikipedia.org/wiki/Personal_flotation_device) (a PFD is "designed to assist a wearer, who may be either conscious or unconscious, to keep afloat").
[53] *Id*, ¶ 2, Ex. R.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF
LITIOC/2104589v8/102566-0002

## 2.   The Armband Attachment and Placement are Functional (*See* Exhibit A, No. 2)

Likewise, the attachment and placement of armbands are also primarily functional and not ornamental. ███████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████ Ms. Balistreri also opined that the armbands must be attached to prevent slipping off, to keep the device in place and not turn around the wrong way, and to meet the required performance standards, including the freeboard test of UL.[56]  Moreover, the armband attachment is functional because this device with unattached armbands would not qualify for USCG approval and hence cannot be used as intended.[57]

Likewise, the placement of the armband attachment is functional. ████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

FIG. 8



---

[54] *Id.,* ¶15, Ex. M at 23:16-24:9.
[55] *Id.* at (Steger Dep. at 47:24-49:15).
[56] Balistreri Decl., ¶ 25.
[57] *See Id.,* ¶ 15, Ex. M at 52:10-16; Balistreri Decl., ¶ 25.
[58] Mikulka Decl., ¶ 15, Ex. M (Steger at 56:1-15).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

18

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

*See* D'714 Patent, Fig. 8. Hence, the armbands must be attached to the device and placed as such to function as intended.

### 3. The Tapered Configuration of the Armbands Is Functional (*See* **Exhibit A, No. 3**)

The tapering of the armbands is functional because it is necessary for ease of movement, manufacturing, comfort, secure fit, and when folded, the armbands naturally form the tapered design.





The Steger utility patent application touted the utility of the tapered configuration: "[t]he tapered configuration, especially in the armband flotation assemblies, allow for enhanced freedom of movement of the child's arms as the thinner section is located under the arms."[59]

Mr. Steger further explained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[59] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                    85).
[60] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2104589v8/102566-0002

Likewise, Ms. Balistreri also explained that the tapered configuration allows for proper fit under the wearer's arms and allows a wearer to maneuver their arms easily without obstruction.[62] Therefore, without the tapered configuration, the PFD would not fit or function as intended.  Indeed, as illustrated by the PTO's rejection of the Steger utility patent application as obvious, the tapered arm bands were apparent in prior art, such as the expired Kierner patent, a device with a torso pad, back attachment, "and with armbands" that "taper to be narrower under the armpits of the user" [63]

### 4.    The Tapered Configuration of the Side Torso is Functional (*See* **Exhibit A, No. 4**)

The downward slope of the sides is functional and not ornamental because of a simple reason: it is necessary to fit under the arms.  This is because the sides of a PFD, similar to in a shirt, must slope down toward the bottom to fit underneath the user's arms.



This is confirmed by Mr. Steger who testified that he designed the sides to taper to allow for a comfortable fit.[64]  Ms. Balistreri similarly opined that the

---

[62] *Id.,* at ¶ 27.
[63] *Id.,* ¶ 7, Ex. F at 0000057 (emphasis added); *see Id.* 8; Ex. G (Kierner, Fig. 4. At Coleman0000161).
[64] Mikulka Decl.,¶ 15, Ex. M (Steger Dep. at 47:24-49:15).

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2104589v8/102566-0002

sloped side torsos are functional.[65]  She explained that just like arm holes in a shirt, the side torso is designed with a slope from front to the back to naturally fit the wearer under the arms, and are necessary for comfort and flexibility.[66]

Moreover, as depicted in the various PFD designs identified in Coleman's claim construction disclosure, the field of prior art was crowded with PFDs with this same design attribute – tapered sides.  *See* Mikulka Decl., ¶ 23, Exhibit U. Hence, tapered sides of PFDs in themselves cannot possibly serve as ornamental novelty and this basic design concept should be excluded when conducting an infringement analysis.

In sum, the above-discussed features are functional and Coleman can cite to no evidence that there were viable alternatives.[67]  Hence, Sport Dimension requests that the Court to adopt the following construction:

- The armbands are functional and not ornamental (*See* Ex. A, No. 1);
- The armband attachments and placement are functional and not ornamental (*See* Ex. A, No. 2);
- The armband tapering is functional and not ornamental (*See* Ex. A, No. 3);
- The tapering of the sides is functional and not ornamental (*See* Ex. A, No. 4).

## B.    The Applicant's Prosecution Disclaimers During Patent Prosecution Narrow the Scope of the D'714 Patent

During patent prosecution, Coleman made a number of prosecution disclaimers to get around the rejections by the PTO.  Hence, a claim construction is required to accordingly narrow the scope of the D'714 Patent.[68]

---

[65] Balistreri Decl., ¶ 29.
[66] *Id.*
[67] *Id.*, at ¶¶ 30-31.
[68] *See Ventana Med. Sys. v. Biogenex Labs., Inc.*, 473 F.3d 1173 (Fed. Cir. 2006) ("A court examines the patent's prosecution history, when placed in evidence, to determine whether the inventor disclaimed a particular interpretation of a claim

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

Here, the PTO rejected Coleman's design patent application under 35 U.S.C. § 112 as indefinite and nonenabling.[69]  The PTO stated the claimed invention was "not described in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same, and fails to particularly point out and distinctly claim the subject matter which application regards as the invention."[70]  The PTO explained that this was due to the "extremely confusing and inconsistent quality of the drawings."[71]

To cure these deficiencies and overcome the PTO's rejection, Coleman submitted a response with replacement drawings.[72]  In so doing, Coleman made certain prosecution disclaimers. The scope of the D'714 Patent must be narrowed accordingly.

### 1.    Arm Band Attachments (*See* Exhibit A, No. 5)

In its claim rejection of the D'714 Patent, the PTO stated that "[t]he section of the arm floats that attaches to the float for the upper torso shown in Figs 2-3 is not shown in Figure 1."[73]  To get around the rejection, Coleman added a triangular shaped material consistently in the replacement drawings, disclaiming the design without the material between the armband and the upper torso.[74]

### 2.    Arm Band Edges (*See* Exhibit A, ¶ No. 6)

As another basis for its claim rejection of the D'714 Patent, the PTO stated that "the arm floats shown in Figures 1 and 8 show a hard edge around the ends of arm floats, but in Figures, 2, 3, 6 and 7 the edge of the arm floats is curved and does not show the edge."[75]  To get around the rejection, Coleman submitted

---

term during the prosecution of the patent in suit or during the prosecution of an ancestor application.").
[69] *See Id.* at 11, Ex. I at Coleman0000256-261.
[70] *Id.* at Coleman0000256, 260.
[71] *Id.*
[72] *See Id., ¶* 12, Ex. J (Coleman0000241-253).
[73] *See* Mikulka Decl., ¶ 11, Ex. I at Coleman0000259.
[74] *See Id., ¶* 12, Ex. J at Coleman 0000241, Figures 1-2; *See Id.* 2, Exhibit A; Exs. I, J (Coleman 0000259 compared with 0000241).
[75] *See Id.,¶* 11, Ex. I at Coleman0000256.

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2104589v8/102566-0002

replacement drawings that removed the hard edges consistently including in Figures 1 and 8.[76]

### 3.   Arm Band Tapering (*See* Exhibit A, ¶ No. 7)

In the claim rejection, the PTO stated that "the area around the arm float shown in Figures 1 and 8 has the same thickness around the entire opening, but in Figures 4 and 5, the same area is much thinner on the inside bottom of the arm float."[77]   In response, Coleman submitted replacement drawings in which the tapered configuration was added consistently.[78]

### 4.   No Vertical Edges (*See* Exhibit A, ¶ No. 8)

In the claim rejection, the PTO stated that "the two vertical edges on the top of the float show in Fig. 6 are known shown in Figures 1 and 2."[79] In response, Coleman submitted replacement drawings which removed the vertical edges consistently.[80]

### 5.   Top Front Torso (*See* Exhibit A, ¶ No. 9)

In the claim rejection, the PTO stated that "the view in Fig. 1 shows and edge on the inside top area of the float that is not shown in Fig. 2."[81]   This is also consistent with the product layout as specified in the UL file which requires that the top of the front torso be cut straight across.[82]   In response, Coleman added straight configuration to the top of the front torso consistently in the replacement drawings.[83]

The PTO accepted the replacement drawings and incorporated them in the issued D'714 Patent.   Hence, in view of Coleman's disclaimers, which Coleman made to get around the claim rejections, Sport Dimension requests the following

---

[76] *Id.*, ¶ 12 at Ex. J at Coleman 0000241-242, Figures 1-8.
[77] *See Id.*, ¶ 11, Ex. I at Coleman 0000258.
[78] *See Id.*, ¶ 12, Ex. J at Coleman 0000241-242, Figures 1-4, 5.
[79] *See* Mikulka Decl., ¶ 11, Ex. I at Coleman0000256.
[80] *See Id.*, ¶ 12, Ex. J at Coleman 0000241-242, Figures 2, 6.
[81] *See Id.*, ¶ 12, Ex. I at Coleman0000258.
[82] *See Id.*, ¶ 18; Ex. P (UL File at 0000666-0000668).
[83] *Id.*, ¶ 12, Ex. J (Figures 1-3 at Coleman 0000241).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

23
SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

construction, which clarifies and defines the elements that are remain claimed by the D'714 Patent:

- The armbands are attached vertically with a triangular shaped material attached to the body of the personal flotation device (Ex. A, No. 5);
- The armbands are curved at the ends and do not include hard edges (Ex. A, No. 6);
- The armbands gradually taper thinner and symmetrically on both sides on the bottom portion of the armbands (Ex. A, No. 7);
- There is no gathering of vertical edges at the point where the torso and the armbands attach (Ex. A, No. 8); and
- "The top of the upper torso is straight across, without a sloped edge or a curve until the point just before where the top of the torso meets the triangular-shaped material connected to the armbands. (Ex. A, No. 9).

## IV.   CONCLUSION

For the foregoing reasons, Sport Dimension requests that the Court adopt the following proposed construction, removing the functional and disclaimed elements and rejecting Coleman's construction and arguments:

- The armbands are functional and not ornamental;
- The armband attachments and placement are functional and not ornamental;
- The armband tapering is functional and not ornamental;
- The tapering of the sides is functional and not ornamental;
- The armbands are attached vertically with a triangular shaped material attached to the body of the personal flotation device;
- The armbands are curved at the ends and do not include hard edges;
- The armbands gradually taper thinner and symmetrically on both sides on the bottom portion of the Armbands;

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF

LITIOC/2104589v8/102566-0002

1      &bull;  There is no gathering of vertical edges at the point where the PFD

2    torso and armbands attach; and

3      &bull;  The top of the upper torso of the PFD is straight across, without a

4    sloped edge or a curve until the point just before where the top of the

5    torso meets the triangular-shaped material connected to the armbands.

6

7    DATED:  October 20, 2014          STRADLING YOCCA CARLSON &
                                        RAUTH

8

9                                      By:   /s/Yuri Mikulka

10                                           YURI MIKULKA
                                             SARAH S. BROOKS

11                                           Attorneys for Plaintiff
                                             SPORT DIMENSION, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

25

SPORT DIMENSION'S OPENING CLAIM CONSTRUCTION BRIEF