YURI MIKULKA, SBN 185926
(ymikulka@sycr.com)
SARAH S. BROOKS, SBN 266292
(sbrooks@sycr.com)
BRADLEY E. MARRETT, SBN 288079
(bmarrett@sycr.com)
STRADLING YOCCA CARLSON &
RAUTH
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Attorneys for Plaintiff and
Counter-defendant,
SPORT DIMENSION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SPORT DIMENSION, INC., a California Corporation,<br><br>            Plaintiff,<br><br>THE COLEMAN COMPANY, INC., a Delaware Corporation,<br><br>            Defendants. | CASE NO. 2:14-cv-00438-BRO-MRW<br><br>Hon. Beverly O'Connell<br>Courtroom: 14<br><br>**SPORT DIMENSION, INC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**<br><br>**Claim Construction Hearing**:<br><br>Date: January 26, 2015<br>Time: 1:30 p.m. |
| THE COLEMAN COMPANY, INC., a Delaware Corporation,<br><br>            Counter-claimant,<br><br>            vs.<br><br>SPORT DIMENSION, INC., a California Corporation,<br><br>            Counter-defendant. | |

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LITIOC/2109598v4/102566-0002

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................. 3

    A.    Legal Standard on Functionality .......................................................... 3

    B.    Coleman Fails to Conduct Analysis on the Functional Elements ........ 3

    C.    Coleman Fails to Consider The Article of Manufacture In Conducting Its Functionality Analysis ................................................. 5

        1.    The Article of Manufacture Is A PFD ....................................... 6

        2.    Coleman Fails To Analyze The Functionality of the Article of Manufacture .............................................................. 7

    D.    Coleman's Proposed Alternative Designs Do Not Share the Same Utility Or Were Unavailable At The Time Of Conception ........ 8

    E.    Coleman Fails to Consider Other Functionality Factors ................... 11

        1.    Concomitant Patent Claims the Same Utility ........................... 11

        2.    Alternative Designs Adversely Affect Utility .......................... 12

        3.    The Features at Issue Represent The Best Design ................... 14

        4.    Coleman's Advertising Touts Functional Features .................. 14

III.  CONCLUSION ....................................................................................... 15

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

i
**TABLE OF CONTENTS**

LITIOC/2109598v4/102566-0002

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Cheng v. AIM Sports, Inc.*,
5
   Case No. 10-cv-3813-PSG, 2011 U.S. Dist. LEXIS 42462 (C.D. Cal.
   Apr. 14, 2011) ........................................................................................... 6
6

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
7
   747 F.3d 1326 (Fed. Cir. 2014) .............................................................. 10
8

*PHG Techs., LLC v. St. John Cos.*,
9
   469 F.3d 1361 (Fed. Cir. 2006) .........................................................passim
10

*Shop\*TV, Inc. v. Bed Bath & Beyond, Inc.*,
11
   Case No. 09-cv-57, 2010 U.S. Dist. LEXIS 10170 (D. Colo. Feb. 3,
   2010) ..................................................................................................... 3, 9
12

13
*Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*,
   Case No. 13-cv-734-DDP, 2013 U.S. Dist. LEXIS 159256 (C.D. Cal.
14
   Nov. 5, 2013) .......................................................................................passim
15

REGULATIONS
16

33 C.F.R. 175.13 (2010) ............................................................................. 6
17

18
46 C.F.R. Part 160 ...................................................................................... 6

19
46 C.F.R. Part 160.064 (2010) .................................................................... 7

20

OTHER AUTHORITIES
21

1-23 Chisum on Patents § 23.03 .............................................................. 10

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ii
## TABLE OF AUTHORITIES

LITIOC/2109598v4/102566-0002

## I.     INTRODUCTION

Sport Dimension, Inc. ("Sport Dimension" or "Plaintiff") submits this supplemental brief in support of its request for claim construction of U.S. Patent No. D623,714 (the "D'714 Patent") as directed by the Court in its December 2, 2014 Order (the "Order").[1]  The issue presently before this Court is whether the D'714 Patent, which is entitled "Personal Flotation Device" and claims "an ornamental design for a personal flotation device," includes functional elements that must be factored out of the construction of its claim.  The answer is yes.  This answer is compelled by the evidence of functionality in the patent and its file history, the Coleman Company, Inc.'s ("Coleman") own marketing materials, testimony of the inventor Ralph Steger and expert opinions of Susan Balistreri.  Notably, Coleman's expert Peter Bressler does not dispute that the elements at issue are, in fact, functional.  Coleman instead argues that there are alternative designs that can serve the same function as the D'714 Patent and therefore the elements at issue are not functional and are ornamental.  Coleman's arguments fail for the following reasons.

*First*, Coleman proposes designs, which fail to serve as alternative designs within the meaning of the law.  They fail because they are entirely different devices and are not alternatives to the functional elements at issue.  Indeed, they do not have the same utility as the patented design, which is expressly entitled, described, and claimed throughout the patent and its file history as a "personal flotation device."  Instead, Coleman's proposed alternative designs are either not PFDs (e.g., swimsuits, bathing aids, or float aids) or as Mr. Bressler acknowledges, are "totally different" devices (e.g., a traditional life vest without armbands, or waist belts) that cannot serve as alternatives to the elements at issue.

*Second*, many of the alternative designs proposed by Coleman are irrelevant because they were unavailable at the time of the conception of the D'714 Patent.

---

[1] ECF No. 59.

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

For instance, there is no evidence that products such as Aqua Tot, Tadpool or the Nash Ski Belt referenced in Bressler's report were available at the time of the invention.  Moreover, the file history reveals an admission by the applicant that there were no alternative designs at the time of the conception because prior art such as Kierner which feature inflated armbands and the Wessman Patent which feature arm floats, fail to meet the utility of the armbands featured in the D'714 Patent.  The absence of alternative designs at the time of the conception is confirmed by the opinions of PFD expert Susan Balistreri and by the inventor. Coleman's arguments to the contrary should be rejected.

*Third*, Coleman's arguments fails because Coleman and its expert fail to consider other factors applicable to functionality analysis such as whether (1) the proposed alternative designs would adversely affect the utility of the article of manufacture disclosed in the D'714 Patent, (2) there is a concomitant utility patent, (3) the patented design presents the best design, or (4) the advertising touts the features at issue.  Each militate in favor of finding that the elements at issue are functional and not ornamental.

*Finally*, Coleman's arguments, which rely on the opinions of its proposed expert, Peter Bressler, must fail.  As more fully detailed in Sport Dimension's accompanying motion to strike, Bressler admits he is not qualified as an expert in personal flotation devices (or any other type of wearable buoyant devices). Additionally, Bressler concedes that he did not analyze the intended use or functionality of the elements of the D'714 Patent at issue or the alternative designs he proposes.  Instead, Bressler admits that his opinions are based on his "imagination" that the alternative designs "might" work.  Because Bressler's opinions are not qualified, reliable, or helpful to this Court, they should be stricken and given no weight.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

2
**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**
LITIOC/2109598v4/102566-0002

## II.  ARGUMENT

### A.  Legal Standard on Functionality

"Only 'the novel, ornamental features of the [D'714 Patent] design,' not the functional elements" are protectable.[2]  Hence, as the Court recognized, "[w]here a design contains both functional and nonfunctional elements, the scope of the claim *must* be construed in order to identify the nonfunctional aspects of the design as shown in the patent."[3]  Under the law, it is the functionality of the elements at issue that must be analyzed, rather than the functionality of the whole device.[4]  In determining whether a design or elements of a design are functional, the Federal Circuit has instructed that consideration should be given to several factors, including: whether (1) there is a concomitant utility patent, (2) alternative designs would adversely affect the utility of the article of manufacture, (3) the design of the element represents the best design, and (4) the product marketing touts particular features having specific utility.[5]  Additionally, where federal regulations govern the performance of the article of manufacture, the functionality of the design elements must be considered in light of those standards.[6]

As discussed below, each of these factors militate toward finding that the armband design, armband configuration/attachment, and torso tapering are functional and not ornamental.

### B.  Coleman Fails to Conduct Analysis on the Functional Elements

Coleman and Bressler incorrectly assume that determining functionality of the D'714 Patent does not require analysis of the functionality of the elements at

---

[2] Order, ECF No. 59, at 8 (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).
[3] Order, ECF No. 59, at 8-9 (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008)) (emphasis added).
[4] *See Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*, Case No. 13-cv-734-DDP, 2013 U.S. Dist. LEXIS 159256, *14-15 (C.D. Cal. Nov. 5, 2013).
[5] *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1367 (Fed. Cir. 2006) (citation omitted).
[6] *Shop*TV, Inc. v. Bed Bath & Beyond, Inc.*, Case No. 09-cv-57, 2010 U.S. Dist. LEXIS 10170, *4-5 (D. Colo. Feb. 3, 2010).

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

1  issue.[7]  That incorrect assumption contradicts the statement of the law that the

2  Court must "identify the non-functional aspects . . . and factor out the functional

3  aspects", and infects each of Coleman's arguments and Bressler's opinions here.[8]

4       For instance, Mr. Bressler admitted that he did not analyze whether the

5  functional elements at issue were dictated by function.[9]  In fact, when asked,

6  Bressler conceded the elements at issue *were* functional.[10]  Yet, without analysis

7  and based purely on his "imagination," he opined that alternative designs to the

8  D'714 Patent could perform the same utility.[11]  Bressler's opinions are neither

9  reliable nor helpful, and should be disregarded.

10      As for the Coleman's argument that there are numerous ways in which to

11  design a wearable garment that floats, it simply misses the mark.  Coleman's

12  analysis repeats the same mistake made by the patentee in *Z Produx*.[12]  There, the

13  patentee argued that its cosmetic case design was not functional because there were

14  numerous alternative ways to design a case that performed the function of storing

15  [7] *See* Bressler Rep. ¶ 17.

16  [8] Order, ECF No. 59, at 11 (internal citations and punctuation omitted).
   [9] *See, e.g.*, Bressler Dep. Tr. at 175:14-19 (admitting that he did not conduct any

17  analysis as to the intended purpose of the tapered armbands); *id.* at 152:5-8 (no
   analysis to determine whether the D'714 device can function without armbands);

18  *id.* at 150:16-21 (no analysis on how much the armbands contribute to buoyancy);
   *id.* at 177:9-13 (no analysis to determine whether mobility would be adversely

19  affected if the armbands were not tapered); *id.* at 178:6-23 (not aware of alternative
   materials that could be used D'714 patent device; did not know if other PFDs with

20  armbands used anything but polyethylene); *id.* at 187:2-13 (does not know whether
   only polyethylene can be used, as Balistreri testifies); *id.* at 194:17-20 (no analysis

21  to determine how much tapering was required); *id.* at 195:3-16 (unaware of
   armband devices sold in the US without tapered sides).

22  [10] *Id.* at 148:2-23; 149:2-150:18 (agrees that the purpose of the armbands is to
   provide flotation and to prevent slip-off); *id.* at 150:22-151:19 (does not disagree

23  with Ms. Balistreri's buoyancy testing because he is not a PFD expert); *id.* at
   175:21-177:13 (acknowledges that the tapering is to reduce the amount of material

24  between the arms and the torso to facilitate arm movement); *id.* at 194:5-8 (same)
   *id.* at 181:15-22 (does not disagree with Balistreri that armbands must be attached

25  for USCG approval); *id.* at 182:10-183:18; 187:2-188:20 (purpose of armband
   attachment is to prevent chest piece from falling down and to prevent drowning);.

26  [11] Bressler Dep. Tr. at 232:13-17 (concerning alternative designs, he testified that
   the basis for his opinions are his imagination); *see also id.* at 246:7-247:9; (never

27  analyzed whether alternative designs have sufficient buoyancy).
   [12] 2013 U.S. Dist. LEXIS 159256, at *14-15.

28

4

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

1  cosmetics.[13] The court rejected the patentee's argument, finding: "[the patentee's]

2  argument [] unavailing because it mistakenly assumes that it is the functionality of

3  the device as a whole, rather than the functionality of the elements at issue, that

4  matters for the construction of a design patent."[14]

5          Here, Coleman makes the same mistake by ignoring the functionality of the

6  elements at issue, and instead proposing alternative designs that do not have

7  armbands and/or perform differently.  For example, Coleman proposes traditional

8  full-coverage life jackets or collared life jackets as an alternative design.[15]  As Mr.

9  Bressler admitted, however, these devices are "totally different devices" and hence

10 should not be considered.[16]  This is because devices with additional coverage

11 throughout the body or support on the neck function differently than the D'714

12 Patent design, which as Mr. Bressler admitted is a flotation device with armband,

13 which is intended to provide buoyancy and support by combining the utility of the

14 chest piece with armbands.[17] Therefore Coleman's arguments regarding alternative

15 designs should be rejected.

       **C.    Coleman Fails to Consider The Article of Manufacture In
               Conducting Its Functionality Analysis**

16

17         The functionality analysis requires analyzing how the article of manufacture

18 depicted in a design patent is intended to function.[18]  Coleman and its expert err in

19 failing to analyze the D'714 Patent's article of manufacture, *i.e.*, a PFD. [19]

20

21 [13] *Id.* at *14-17.
   [14] *Id.* at *11.
22 [15] *See* Decl. of Y. Mikulka ("Mikulka Decl."), Ex. CC (images of proposed
   alternative designs).
23 [16] Bressler Dep. Tr. at 219:8-23 (looked for alternative designs with armbands
   because you would not want an ordinary observer to understand it as a "totally
24 different device"); *id.* at 217:4-16 (lifejackets are not alternative designs because
   they do not have armbands).
25 [17] Bressler Dep., at 219:8-23 (intended use is a flotation device with armbands); *id.*
   at 218:3-23 (use "projected" based on figure 8 which shows a person wearing the
26 device around their torso upper arms); *see also* Balistreri Rebuttal Rep. ¶¶ 17-26.
   [18] *See, e.g., Cheng v. AIM Sports, Inc.*, Case No. 10-cv-3813-PSG, 2011 U.S. Dist.
27 LEXIS 42462, *8 (C.D. Cal. Apr. 14, 2011) (In analyzing functionality,
   consideration is given to whether "there are several ways to achieve *the function of*
28 *an article of manufacture* . . . .") (citation omitted).

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2109598v4/102566-0002

### 1.   The Article of Manufacture Is A PFD

Coleman cannot deny that the D'714 Patent is expressly entitled, described, and claimed throughout the file history as a "personal flotation device."  Not only is the D'714 Patent named "***Personal Flotation Device***", the Claim is the "ornamental design for a ***personal flotation device***, as shown and described"; and the Description identifies the illustrations as a "***personal flotation device***."[20]  The file history also describes the invention as "a personal flotation device and more particularly to ***a personal flotation device having armbands***"; and further states that "the [] invention addresses the problems associated with the prior art devices and provides for a ***personal flotation device with a retention member for operatively connecting armband flotation pads about the wearer***."[21]

Sport Dimension's expert, Ms. Balistreri, explains that the term "personal flotation device" has a "particular meaning" in the industry.[22]  Specifically, PFD is a federally regulated term: "'personal flotation device' means a device that is approved by the Commandant [U.S.C.G.] under 46 C.F.R. Part 160."[23]  By law, a PFD must function within standards established by federal regulations, the USCG, and the USCG's designated testing laboratory, UL.[24]  Those standards include performance standards for minimum buoyancy, buoyancy distribution, materials,

---

[19] Bressler Dep. Tr. at 123:15-124:8 (acknowledges that in conducting functionality analysis, it is important to determine how an article of manufacture is intended to perform); *id.* at 100:4-8 (never analyzed the intended use of a PFD; *id.* at 99:10-11 (no expert opinion on the intended use of a PFD).
[20] ECF No. 38-3 (SD000159-161) (emphasis added).
[21] ECF No. 29-6 (SD000484 at [0002], [0008]) (emphasis added).  As briefed previously, Mr. Steger intended to invent a PFD with armbands that can meet USCG approval.  *See* Ex. VV (Steger Tr.), pp. 18-22.
[22] Balistreri Rep. ¶¶ 17, 18; *see also* Order, ECF No. 59, at 8 (observing "[e]xpert testimony may be particularly useful in . . . ensur[ing] that a particular term in the patent or the prior art has a particular meaning in the pertinent field.").
[23] 33 C.F.R. 175.13 (2010); *see also* Balistreri Rep. ¶ 17.
[24] *Id.*; 46 C.F.R. Part 160.064 (2010); *see also Approval Guidance for Recreational PFDs / Lifejackets*, USCG.mil, http://www.uscg.mil/hq/cg5/cg5214/ recpfd.asp (last visited 1/6/2015) ("All PFDs must be tested by the USCG's Recognized Laboratory, which is Underwriters Laboratory, Inc."); *see also* Balistreri Rep. ¶¶ 17-22; Balistreri Rebuttal Rep. ¶¶ 5-16.

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

LITIOC/2109598v4/102566-0002

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

and secure fit.[25]  Each of the performance requirements is critical in ensuring the safety of the user in the water.[26]  The file history of the D'714 Patent confirms that the illustrated device was specifically intended to not only meet those performance standards but also to solve problems associated with the "[t]ypical U.S. Coast Guard approved Type III personal flotation devices."[27]  The solution claimed by the invention disclosed in the D'714 Patent is a "personal flotation device with armbands."[28]  Because the article of manufacture disclosed in the D'714 Patent is a PFD, and in particular, "a personal flotation device having armbands", the functionality of the elements at issue must be evaluated in light of the utility of a PFD, which must be conform to USCG and UL performance standards.

## 2. Coleman Fails To Analyze The Functionality of the Article of Manufacture

Despite that the D'714 Patent is a PFD, Coleman did not analyze the functionality of the article of manufacture – a PFD.  Instead, Coleman relies on the unqualified "imagination" of its expert to conjure how the illustrations in the D'714 Patent *might* function if they were made into a real device.[29]  In contrast, Sport Dimension's expert Ms. Balistreri, with 35 years of experience in the PFD industry, analyzed the D'714 Patent together with the Puddle Jumper product, the commercial embodiment, to determine how the device was intended to function.[30]

[25] The D'714 article of manufacture is approved under 46 C.F.R. Part 160.064. *See* Mikulka Decl., Ex. II (COLEMAN0000678); *see also* Mikulka Decl., Ex. JJ (SD002643).
[26] Balistreri Rep. ¶¶ 17-22; Balistreri Rebuttal Rep. ¶¶ 5-16; Balistreri Dep. Tr. 236:5-6; Mikulka Decl., Ex. KK (Bressler Dep. Ex. 17 (USCG Website)).
[27] Mikulka Decl., Ex. LL (COLEMAN0000185).
[28] *Id.*
[29] *See, e.g.,* Bressler Dep. Tr at 246:7-247:9.  As more fully detailed in Sport Dimension's motion to strike, which is incorporated herein by reference, Bressler's opinions should be excluded because (1) Bressler is not qualified as an expert in PFDs, and (2) Bressler's methodology is wholly subjective and unreliable. Bressler's unsupported, unreliable opinions, and related arguments, should be rejected and given no weight.
[30] Balistreri Rep. ¶¶ 36-45.

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2109598v4/102566-0002

She also measured and tested the Puddle Jumper product to analyze whether the design is dictated by function.[31]  Ms. Balistreri's thorough analysis led her to the opinion that the D'714 Patent device could not function without armbands, the armband configuration/attachment, or the torso tapering depicted in the D'714 Patent.[32]  None of this is rebutted by Mr. Bressler.[33] Instead, he presents inapplicable alternative designs which are not PFDs and which he did not analyze to determine whether they can substitute the elements at issue.  Mr. Bressler's unqualified imagination about how the D'714 Patent design or alternative designs might work is insufficient to rebut Balistreri's real experience and real science.

### D.   Coleman's Proposed Alternative Designs Do Not Share the Same Utility Or Were Unavailable At The Time Of Conception

As discussed above, Coleman's sole argument against functionality is that there are alternative designs to the D'714 Patent, when utility is viewed holistically.  However, as discussed, what matters is not whether another device can perform the utility of the D'714 Patent as a whole but rather whether there were alternative designs for the elements at issue.[34] The alternatives proposed by Coleman do not qualify as alternatives because they: (1) do not perform the utility of the elements at issue and/or (2) were unavailable at the time of conception.

First, "[o]nly alternative designs that have the same utility of the patented design are appropriate comparators for purposes of the functionality analysis."[35]  In *Shop*TV*, the court found a design for a travel carrying case invalid on functionality grounds.[36]  The court's determination of functionality focused on the fact that the container was designed to satisfy federal regulations governing the

---

[31] *Id.*
[32] *Id.*
[33] *See, supra,* n. 10.
[34] *Z Produx*, 2013 U.S. Dist. LEXIS 159256, at *11.
[35] *Shop*TV*, 2010 U.S. Dist. LEXIS 10170, at *4-5 (citing *PHG Techs.*, 469 F.3d at 1378).
[36] *Id.*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LITIOC/2109598v4/102566-0002

size and amount of items that are permitted to be carried onboard an airplane.[37]  In analyzing the proposed alternative designs, the court observed that where the utility of a design is made to "compl[y] with federal regulations," proposed alternative designs that do not accomplish that function should not be considered.[38]

Here, the patent and the file history expressly labels the device as a PFD, and the inventor admitted that he invented an armband PFD to meet USCG approval; thus, to be considered as alternative designs to the D'714 patent, the alternative designs proposed by Coleman must be a PFD, with armbands.[39] No proposed alternatives available at the time of the invention meet those criteria.

First, as for the "traditional" life jacket designs proposed by Coleman, as discussed above, they are not alternatives because they have elongated torso, coverage in the shoulders and back and are not intended to be used with armbands or to provide outrigger effect provided by the patented device.

Second, as for the "alternatives" that do have armbands or arm floats, such as the DE No. 3539528 ("Kierner patent"), and U.S. No. 4,692,125 ("Wessman patent")[40], as the file history explains, they fail to meet the utility of the armbands in the D'714 Patent.  The Kierner patent discloses armbands which are inflatable, and therefore cannot function as a PFD or meet the utility of the invention of providing armbands that do not slip off or are prone to damage.[41]  Moreover, the Wessman patent discloses arm floats which fail to provide a secure fit necessary for a PFD.[42]  In addition, U.S. No. D56,815 ("Kelso patent"),[43] U.S. No. D379,839

---

[37] *Id.*
[38] *Id.*
[39] Mikulka Decl, Ex., VV (Steger Dep. Tr. at 117:5-11).
[40] *See* Mikulka Decl., Ex. CC (images of alternative designs)
[41] Mikulka Decl., Ex. LL; Balistreri Rep. ¶ 48; *see also* Bressler Dep. Tr. at 226:2-18 (acknowledging that Kierner is different because it is an inflated device); *id.* at 111:20-112:2 (agreeing that the Kierner design cannot meet USCG approval).
[42] Bressler Dep. Tr. at 227:1-228:20 (Wessman is different because it provides for arm floats, not armbands, and arm floats are less secure and comfortable).
[43] *Id.* at 236:2-19; 237:15-238:15 (admits that Kelso patent is substantially different and has a different torso and armbands that do not encircle the arms)

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

("McMahon patent"),[44] and U.S. No. D439,028 ("Shaffer patent")[45] are not PFDs, function differently, and they cannot serve as substitutes for the elements at issue.[46]

Finally, Coleman proposes designs which did not exist at the time that the D'714 Patent was conceived and cannot serve as alternative designs.[47]  Because functionality is part of the invalidity analysis, only those alternative designs that existed in the state of the art at the time of conception can be considered as alternative designs.[48]  Here, the date of the utility patent application is December 27, 2006.  The Aqua Tot product is a patented product, a patent for which was not issued until April 2013, three years after the patent issued on the D'714 Patent (and six years after the priority date claimed by the D'714 Patent).[49]  The Tadpool product was first offered for sale circa 2013; again, several years after the D'714 patent conception.[50]  There is no evidence that the Nash ski belt[51] existed at the time of the invention.  Indeed, Coleman's expert never conducted analysis to

---

[44] *Id.* at 231:21-232:23 (opinion only based on his "imagination"; does not know what a device with the substitute armbands would look like"); *id.* at 235-11-236:1 (beyond "projecting," no analysis to verify that the armbands depicted in the D'839 patent could be used for the D'714 patent and meet its intended use).
[45] Bressler Dep. Tr. at 241:20-242:5; 245:12-24 (admits Schaeffer patent is a swimsuit and doesn't know whether its armbands can work with the D'714 design); *see also id.* at 243:11-15 (has no idea how the armbands in the Schaeffer patent function); *id.* at 242:8-243:10 (only basis for determining that it "might" be an alternative is there's nothing in the design patent to say they're not equivalent); *id.* at 246:7-247:9 (has not done anything to verify that the D'028 armbands will work with the chest piece of the D'714 patent other than using his "imagination").
[46] *See* Balistreri Rep. ¶¶ 46-48; *see also* Balistreri Rebuttal Rep. ¶¶ 17-26.
[47] *See* Mikulka Decl., Ex. MM (SD0003135 (Aqua Tot Patent)); Balistreri Dep. Tr. at 41:19-42:1 (Tadpool offered for limited sale in 2013); *cf.* Bressler Dep. Tr. at 418:2-6 (did not analyze whether the devices were available before 2007).
[48] *See* 1-23 Chisum on Patents § 23.03 (discussing design patent validity requirements and citing *Smith v. M & B Sales & Mfg.*, 1990 U.S. Dist. LEXIS 1310 (N.D. Cal. 1990) for the proposition that the alternative design analysis is whether "the inventors ha[d] choices or alternatives about how to accomplish a particular function or how to solve a particular design problem" available to them; *cf. also MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014) (other aspects of validity also look to the "scope and content of the prior art," *not* the scope and content of the *present* art).
[49] Mikulka Decl., Ex. MM (SD003135); *see also id.*, Ex. UU (SD003142).
[50] Balistreri Dep. Tr. at 41:19-42:1.
[51] Mikulka Decl., Ex. NN (Bressler Dep. Ex. 9).

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

determine whether the alternative designs were available at the time of the conception.[52]  In any event, the applicant waived the argument by insisting there were no alternative designs available at the time of conception.[53] Moreover, despite Coleman's selected citation, a full reading of the inventor's testimony reveals that he tried various designs but none were feasible.[54]  In sum, none of the proposed designs are alternative designs to the elements of the D'714 Patent.

### E.   Coleman Fails to Consider Other Functionality Factors

Fatal to Coleman's functionality analysis is its failure to complete its functionality analysis.  In addition to existence of alternative designs, there are several additional factors courts consider when determining whether elements of a claimed design are functional.[55]  Coleman fails to analyze these other factors.

#### 1.   Concomitant Patent Claims the Same Utility

This is an unusual case in that functionality is expressly described in the utility patent application which preceded the D'714 Patent.  As in *Z Produx*, in this

---

[52] Bressler Dep. Tr. at 418:2-6 (unaware whether Aqua Tot was available before 2007); 250:24-251:11 (did not determine whether the alternative deigns were available at or before the time of the invention of the D'714 patent.
[53] The utility patent application explained that PFDs without armbands were unsafe and that inflated armbands could not be USCG approved.  Mikulka Decl., Ex. LL (COLEMAN0000184).
[54] The inventor Mr. Steger testified there were no feasible alternatives to the armband designs.  Mikulka Decl., Ex. VV (Steger Dep. Tr. at 101:21-102:13 (█████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

, 469 F.3d at 1367.  *Id.*; *see also Z Produx*, 2013 U.S. Dist. LEXIS 159256, at *12-17.  The analysis in *Z Produx* is analogous and instructive. There, the court agreed with the accused infringer that the elements at issue were functional after considering (1) that there was a utility patent application that claimed the functionality of the disputed elements; (2) the patentee touted the functionality of the disputed elements as features that its customers desired; and (3) the disputed elements added functionality to the article of manufacture and were not only ornamental.

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

case, the applicant submitted a utility patent application claiming utility of the features at issue.  The existence of a prior utility patent touting the importance of the features at issue estops and serves as a waiver to Coleman's attempt to now diminish the importance of the disputed elements.[56]  Here, Coleman's utility patent application claimed a PFD comprising "right and left armband flotation pads each having a plurality of stacked, detached, planar flotation pads that, when folded to proximate a circle, form an armband flotation pad of tapering thickness."[57]  It described the tapering and configuration as "allow[ing] for enhanced freedom of movement of the child's arms as the thinner section is located under each arm."[58]  Moreover, the applicant insisted that inflated armbands disclosed in prior art Kierner and arm floats, such as those disclosed in Wessman, fail to meet the utility of the armbands featured in the D'714 Patent.[59]  In short, the utility patent application and the file history make clear that the elements at issue are functional and not ornamental and there are no alternative designs.  This factor weighs heavily in favor of finding functionality.[60]

## 2.     Alternative Designs Adversely Affect Utility

"A full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged alternative designs would adversely affect the utility of the specified article, such that they are not truly 'alternatives' within

---

[56] *See id.* at *14-15; *see also PHG Techs.*, 469 F.3d at 1367. The indication is further strengthened in that the D'714 Patent is a continuation of the utility patent.
[57] COLEMAN0000064-68 (claim 1(d), claim 10(d); claim 20(f), (g); and claim 25; *see also* Balistreri Rep. ¶ 10; Balistreri Rebuttal Rep. ¶ 22; Balistreri Dep. Tr. 227:21-228:3.
[58] ECF No. 39-6 (SD000485 at [0021]); *see also id.* (SD000485 at [1119]); Mikulka Decl., Ex. LL (COLEMAN0000184-85) (describing intended utility and how it solved problems in the prior art); *see also* Balistreri Rep. ¶¶ 9, 33, 41, 43; Ex. VV (Steger Dep. Tr. at 56:1-15).
[59] Mikulka Decl., Ex. TT.
[60] Bressler Dep. Tr. at 137:21-138:5; 140:24-141:8 (incorrectly assumes the utility patent application that preceded the D'714 Patent application disclosed a different subject matter, and thus fails to give it proper consideration). Notably, Coleman must concede the D'714 Patent is the same subject matter because otherwise the D'714 Patent cannot be a continuation of the utility patent application.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

12

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LITIOC/2109598v4/102566-0002

1   the meaning of our case law."[61]  As the court found, clear top and base were

2   functional and not ornamental despite that they were "not necessary to design a

3   cosmetics palette" because they were necessary for the patented design.  Similarly,

4   although armbands are not necessary for every PFD, it is necessary for this device

5   because the armband shape, attachment and tapering "added functionality to the

6   product, rendering them functional, rather than ornamental . . . ."

7          Coleman cites to no expert opinion or facts to rebut Ms. Balistreri's opinions

8   that the alternative designs would adversely affect the utility of the device.[62]

9   Indeed, Coleman's proffered expert does not rebut or disagree with Ms. Balistreri's

10  buoyancy testing which confirmed that removing the armbands of the D'714 Patent

11  would adversely affect the most basic function of the device: it wouldn't keep a

12  wearer afloat.[63] As to the functionality of the shape of the armbands, Coleman's

13  proffered expert concedes that the circular-tapered shape is functional, and

14  Coleman has failed to establish how the proposed alternative designs are even

15  possible given that polyethylene foam, the only foam available for PFDs of this

16  type, naturally forms a tapered design when folded.[64]  Likewise, Coleman fails to

17  provide other armband attachments viable for this device; instead Coleman

18  provides devices with armbands attached to straps or without encircled armbands,

19  or devices that are swimsuit, swim shirts, or bathing aids, which provide an

20

21  [61] *PHG Techs.*, 469 F.3d at 1367.

    [62] *Z Produx*. 2013 U.S. Dist. LEXIS 159256, at *12.

22  [63] Balistreri Rep. ¶¶ 36-41; SD003636-3644; *see also* COLEMAN0000650-685
    (Coleman's UL MQ29 file corroborates Balistreri's opinions); Bressler Dep. Tr.

23  150:22-151:15.

    [64] *See, e.g.*,Bressler Dep. Tr. 176:17-178:23.  None of the armbands of Coleman's

24  proposed alternative designs achieve the same utility as the armbands in the D'714
    Patent. *See* Mikulka Decl., Ex. LL (COLEMAN0000184, COLEMAN0000187)

25  (file history explaining improvement on utility, problems with Kierner and
    Wessman designs, and that preferred embodiment used polyethylene for

26  functionality reasons); *see also* Balistreri Rep. ¶ 22; Balistreri Rebuttal Rep. ¶¶ 12-
    13; Balistreri Dep. Tr. 227:21-228:3 (polyethylene material required for utilitarian

27  reasons); *see also* Ex. VV (Steger Dep. Tr. 63:10-64:25) (polyethylene was chosen
    because of utility); Steger Dep. Tr. 102:15-25 (different armband shapes not

28  manufacturable).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

13

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LITIOC/2109598v4/102566-0002

1   entirely different body composition and cannot serve as PFDs.  Indeed, for the

2   patented design, as aptly put by the inventor, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.,[65]

4          As for the tapered sides, Ms. Balistreri opined that the armbands of the

5   D'714 Patent, unlike the alternative designs proposed by Coleman, are attached to

6   the torso section of the device directly and hence require the tapering to allow for

7   movement.[66]  Bressler does not rebut this and concedes he is unaware of any

8   alternative designs where armbands were attached to the torso without tapering.[67]

### 3.   The Features at Issue Represent The Best Design

10          The functional features also represent the best design, as illustrated by other

11   prior art and other non-infringing designs providing the same features.[68]  For

12   instance, the Kierner patent and Coleman's own swimsuit line of Puddle Jumper

13   (which Coleman testified does not read on the D'714 Patent), Aqua Tot, and

14   Tadpool have tapered armbands.[69]  Moreover, every alternative design proposed by

15   Coleman has tapered sides, save for the devices that are, unlike the patented

16   design, worn on the waist or configured with sleeves or straps in between the

17   device and arm piece (*e.g.*, the water ski vest, the DiForte patent, and the Wessman

18   patent).[70]  This factor weighs in favor of finding functionality.

### 4.   Coleman's Advertising Touts Functional Features

20          Like the patentee's marketing in *Z Produx* that the court found notable,

21   Coleman's marketing consistently touts the functional elements of the D'714

22   [65] Mikulka Decl., Ex. VV (Steger Dep. Tr. at 56:1-10); Bressler Dep. Tr. at 181:15-
23   22 (does not disagree with Baluster that armbands must be attached for USCG
     approval); id. at 228:-22-229:7 (did not know whether Wessman patent could meet
24   USCG approval).
     [66] Balistreri Rebuttal Rep. ¶¶ 24-25; *see also, e.g.*, Mikulka Decl., Ex. LL
25   (COLEMAN0000065-68) (claim 1(b), (c); claim 8 (tapering)).
     [67] *See* Bressler Dep. Tr. 421:14-23; *see also* Bressler Rep. ¶¶ 54-56.
26   [68] *See PHG Techs.*, 469 F.3d at 1367 (element functional if it represents the best
     design).
27   [69] *PHG Techs.*, 469 F.3d at 1367; Mikulka Decl., Ex. CC.; Balistreri Dep. Tr. at
     234:11-21; Bressler Dep. Tr. at 251:12-18 (Aqua Tot); *id.* at 419:4-8 (Kierner).
28   [70] Mikulka Decl., Ex. CC.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

14

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LITIOC/2109598v4/102566-0002

1   Patent, advertising, for example, that the Puddle Jumper is "U.S. Coast Guard

2   Approved," "stab[le]" in the water, and allows "freedom to move" or a "free range

3   of motion".[71]  Coleman's marketing plans also recognize that these are key features

4   to highlight.[72]  Trying to avoid its own marketing materials that emphasize the

5   functionality of the elements at issue, Coleman withheld them from its own

6   expert.[73]  They, however, confirm that the armband design and attachment and

7   tapered sides which contribute to stability, freedom of movement, and USCG

8   approval are functional and not ornamental.

9   **III.   CONCLUSION**

10          For the foregoing reasons, Sport Dimension respectfully requests the Court

11   give the following construction to the claim in the D'714 Patent:

12          "The ornamental design for a personal flotation device, as shown and

13   described in Figures 1-8, except the left and right armband, and the side torso

14   tapering, which are functional and not ornamental."

15   Dated:  January 12, 2015            STRADLING YOCCA CARLSON &
16                                       RAUTH, P.C.

17                                       */s/ Yuri Mikulka*_____
18                                       Yuri Mikulka, Esq.
                                         Attorneys for Plaintiff/Counterclaim
19                                       Defendant, Sport Dimension, Inc.

20

21

22

23

24   _____
     [71] *E.g.*, Mikulka Decl., Ex. OO (COLEMAN0000633) (stating that Puddle Jumper
25   is the only U.S. Coast Guard-approved life jacket of its kind); Mikulka Decl., Ex.
     PP (COLEMAN0000610) (stating that Puddle Jumper is U.S. Coast Guard
26   Approved and allow[s] freedom of movement for ultra comfortable fit); Mikulka
     Decl., Ex. QQ (COLEMAN0000628-29).
27   [72] Mikulka Decl., Ex. RR (COLEMAN0001881); *see also* Mikulka Decl., Ex. SS
     (COLEMAN0000702).
28   [73] Bressler Dep. Tr. 295:4-296:17.

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**