YURI MIKULKA, SBN 185926
(ymikulka@sycr.com)
SARAH S. BROOKS, SBN 266292
(sbrooks@sycr.com)
BRADLEY E. MARRETT, SBN 288079
(bmarrett@sycr.com)
STRADLING YOCCA CARLSON & RAUTH
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Attorneys for Plaintiff
SPORT DIMENSION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SPORT DIMENSION, INC., a California Corporation, <br><br> Plaintiff, <br><br> THE COLEMAN COMPANY, INC., a Delaware Corporation, <br><br> Defendants. | CASE NO. 2:14-cv-00438-BRO-MRW <br><br> Hon. Beverly O'Connell <br> Courtroom:  14 <br><br> **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SPORT DIMENSION, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br> Requested Hearing Date: <br><br> Date: March 30, 2015 <br> Time: 1:30 p.m. |
| THE COLEMAN COMPANY, INC., a Delaware Corporation, <br><br> Counter-claimant, <br><br> vs. <br><br> SPORT DIMENSION, INC., a California Corporation, <br><br> Counter-defendant. | `FILED UNDER SEAL` |

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 30, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 14 of the above-entitled court, located at 312 N. Spring Street, Los Angeles, California, 90012, Plaintiff Sport Dimension, Inc. ("Sport Dimension" or "Plaintiff") will, and hereby does, move for summary judgment on its claim for declaratory judgment of non-infringement and its claim for invalidity of the patent-in-suit and Coleman's counter-claim for infringement.

The motion is made pursuant to Fed. R. Civ. P. 56(a) because there is no genuine issue as to any material fact and Plaintiff is entitled to summary judgment as a matter of law.

Pursuant to Local Rule 7-3, counsel for Plaintiff and Defendant had a telephonic meet and confer on February 13, 2015.  Further discussion took place on February 19, 2015.  Defendant's counsel indicated that Defendant would not oppose the motion for summary judgment of non-infringement, but that Defendant would oppose the rest of the motion.

This motion is based upon this notice; the accompanying Memorandum of Points and Authorities served and filed herewith; the Statement of Uncontroverted Facts and Conclusions of Law; Declaration Yuri Mikulka; [Proposed] Judgment; all pleadings, records, and files herein; such oral and documentary evidence as may be presented at the hearing of the Motion; and such matters which shall or may be judicially noticed.

DATED:  March 2, 2015

STRADLING YOCCA CARLSON
   & RAUTH, P.C.

By:  /s/Yuri Mikulka
     YURI MIKULKA
     SARAH S. BROOKS
     BRADLEY E. MARRETT
     Attorneys for Plaintiff
     SPORT DIMENSION, INC.

## <u>TABLE OF CONTENTS</u>

Page(s)

I.    INTRODUCTION ................................................................................ 1

II.   SUMMARY OF RELEVANT FACTS ............................................... 3

    A.    The Parties In Suit ................................................................... 3

    B.    The D'714 Patent and File History ......................................... 4

    C.    The Prior Art ............................................................................ 5

    D.    This Court's Orders ................................................................. 6

III.  LEGAL STANDARD ........................................................................ 6

IV.   LEGAL ARGUMENT ....................................................................... 8

    A.    Sport Dimension's Child PFD Does Not Infringe
        the D'714 Patent ...................................................................... 8

    B.    Legal Standard For Design Patent Infringement .................... 9

        1.    Sport Dimension's Child PFD Is Plainly
            Dissimilar From The Design Of The
            D'714 Patent .................................................................. 10

        2.    The D'714 Patent And Sport Dimension Child
            PFD Are Substantially Dissimilar In View Of
            the Prior Art ................................................................... 13

    C.    The D'714 Patent is Invalid Because It Is
        Primarily Functional .............................................................. 13

    D.    The D'714 Patent Is Invalid As Obvious In View Of
        The Prior Art .......................................................................... 15

        1.    Mr. Walters' Unrebutted Opinions Establish
            The D'714 Patent Would Have Been Obvious
            To An Ordinary Designer Of PFDs. ............................. 16

        2.    The Primary Prior Art Reference, The Kierner Patent,
            Discloses Basically The Same Visual Impression As
            The D'714 Patent .......................................................... 17

        3.    The Secondary Prior Art References Also Render
            The D'714 Patent Obvious ............................................ 18

    E.    The Inventor Admits That The D'714 Patent Design Is
        Obvious In Light of the Prior Art .......................................... 19

        1.    Coleman Agreed to Not Present Any Evidence of
            Secondary Considerations That Would Weigh In
            Favor Of Nonobviousness ............................................ 20

F.   The D'714 Patent Is Invalid Under 35 U.S.C. §102(b) Because It Is Not Entitled To The Priority Date Of The Earlier Filed '308 Application ........................................20

1.   Coleman Cannot Meet Its Burden Of Demonstrating That The D'714 Patent Is Entitled To The Earlier Priority Date..............................................................21

2.   Six Of The Eight Drawings In The D'714 Patent Were Not Disclosed At All In The '308 Application..............23

3.   The Remaining Two Drawings In The D'714 Patent Contain Non-Immaterial Variations .............................24

V.   CONCLUSION .................................................25

ii

TABLE OF CONTENTS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................ 6

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*,
67 F.2d 428 (Fed. Cir. 1933) ............................................ 10

*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996) .......................................... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................... 6, 7

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) ............................................ 7

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (Fed. Cir. 1996) .......................................... 15

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ........................... 7, 9, 10, 13

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec. 16, 2010) .................................................................. 10

*Gorham Co. v. White*,
14 Wall. (81 U.S.) 511 (1871) ............................................ 9

*Harel v. K.K. Int'l Trading Corp.*,
994 F. Supp. 2d 276 (E.D.N.Y. 2014) .............................. 12

*In re Owens*,
710 F.3d 1362 (Fed. Cir. 2013) ............................. 21, 22, 24

*In re Salmon*,
705 F.2d 1579 (Fed. Cir. 1983) ........................................ 24

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186 (Fed. Cir. 1988) ........................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ii
TABLE OF AUTHORITIES

*Lindmann Maschinenfabrik, GmbH v. Am. Hoist & Derrick Co.*,
  730 F.2d 1452 (Fed. Cir. 1984) ........................................................... 18

*Matsushita Electric Industry Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................. 6

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
  747 F.3d 1326 (Fed. Cir. 2014) ............................................... 7, 15, 20

*Munchkin, Inc. & Toys "R" Us, Inc. v. Luv N' Care, Ltd*,
  Case IPR 2013-00072 (P.T.A.B. Apr. 21, 2014) ............................... 24

*Nano-Second Tech. Co. v. Dynaflex, Int'l*,
  944 F. Supp. 2d 855 (C.D. Cal. 2013) ............................................... 10

*Petersen Mfg. Co. v. Central Purchasing, Inc.*,
  740 F.2d 1541 (Fed. Cir. 1984) ......................................................... 15

*Power Controls Corp. v. Hybrinetics, Inc.*,
  806 F.2d 234 (Fed. Cir. 1986) ........................................................... 14

*Power Oasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ................................................... 21, 22

*Spencer v. Taco Bell Corp.*,
  No. 8:12-cv-387-T, 2013 U.S. Dist. LEXIS 142619 (M.D. Fla. Oct. 2,
  2013), *aff'd per curiam* 560 F. App'x 997 (Fed. Cir. 2014) ............. 7, 21, 22, 24

*Volstar Techs., Inc. v. Amazon.com, Inc.*,
  No. 13 C 5570, 2014 U.S. Dist. LEXIS 1-2306 (N.D. Ill. Jul. 28, 2014) ......... 12

*Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*,
  665 F. Supp. 2d 357 (S.D.N.Y. 2009) ............................................... 13

*Z Produx, Inc. v. Make-Up Cosmetics, Inc.*,
  No. CV 13-734-DDP, 2013 U.S. Dist. LEXIS 159256 (C.D. Cal. Nov. 5,
  2013) ................................................................................................. 7, 9

**STATUTES**

35 U.S.C. §102(b) ................................................................................... passim

35 U.S.C. §103 ....................................................................................... passim

35 U.S.C. § 112 ................................................................................. 5, 21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

TABLE OF AUTHORITIES

35 U.S.C. §171...................................................................................... 2, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56................................................................................... 6, 7

# I.    INTRODUCTION

Plaintiff Sport Dimension, Inc. ("Sport Dimension") brings this motion for summary judgment on its claims for declaratory relief of non-infringement and invalidity of U.S. Patent No. D623,714 (the "D'714 Patent") and on Defendant Coleman Company, Inc.'s ("Coleman") counter-claim of infringement.

This case involves a dispute over a child personal flotation device ("Child PFD" or "PFD"), a safety device intended to keep children safe in the water. The PFD industry is small. PFDs are offered by a select group of companies such as Sport Dimension and Coleman who have expertise in designing and manufacturing PFDs that meet the rigorous federal, state, and U.S. Coast Guard ("USCG") regulatory standards. In 2013, Coleman embarked on a campaign to prevent PFD competitors such as Sport Dimension from offering alternative child PFDs to consumers. In response to Coleman's threats and interference with Sport Dimension's sales, Sport Dimension filed this action seeking declaratory relief.

This is the unusual case in which a motion for summary judgment is particularly appropriate because many of the issues have already been resolved and no genuine issue of material fact remains. The Court has already entered a claim construction order, which, as admitted by Coleman, conclusively establishes that the accused device does not infringe. It also establishes that the D'714 Patent primarily functional. Further, the admissions of Coleman and the inventor, the Orders excluding Coleman's expert Peter Bressler, Sport Dimension's unrebutted expert testimony and evidence, and Coleman's stipulation during discovery prevent Coleman from rebutting that D'714 Patent is invalid as obvious or based on on-sale bar. The only issues remaining before the Court are questions of law or interpretation of documents, none of which involve genuine issues of material fact.

***First,*** Coleman has conceded that in light of the Court's Claim Construction Order, which found the armbands and side torso tapering are functional elements of the

D'714 patent, Sport Dimension does not infringe the D'714 patent.  In fact, Coleman admits that it would be "impossible" to prove infringement given the Court's claim construction.  Further, judgment of non-infringement is warranted regardless of Coleman's admission based on the full record.  Sport Dimension respectfully requests that the Court enter summary judgment.

**Second,** the Claim Construction Order also operates to render the D'714 Patent invalid for functionality.  As the Court has found, the primary, distinctive elements of the design—the armbands and side torso tapering—are functional.  Because the remaining ornamentality is *de minimis*, the D'714 Patent is primarily functional and invalid under 35 U.S.C. §171.

**Third,** the D'714 Patent is invalid under 35 U.S.C. §103 because the design would have been obvious to an ordinary designer who designs articles of the type involved.  This is confirmed by PFD designers Wayne Walters and the inventor, Ralph Steger.  Both have now testified that the D'714 Patent is obvious in light of prior art, German Patent DE2539528 (the "Kierner Patent"), among others.  Coleman cannot rebut this evidence because the Court has excluded the unqualified expert opinions of Coleman's sole expert, Peter Bressler, and Coleman has presented no other evidence or witnesses in rebuttal.  What is more, to avoid its obligation to produce relevant documents and witnesses, Coleman agreed that it will not present evidence or argument on secondary considerations to non-obviousness.  Accordingly, there is no genuine issue of material fact to rebut that the D'714 Patent is obvious and invalid under 35 U.S.C. §103.

**Fourth,** the D'714 Patent is invalid based on on-sale bar under 35 U.S.C. §102(b).  Coleman sought to monopolize the child PFD market by modifying an abandoned utility patent application, which had been rejected as obvious by the United States Patent & Trademark Office ("PTO").  Coleman then characterized the design patent application as a continuation to avoid the on-sale bar.  The D'714 Patent

application, however, contains new drawings, which were neither prepared by the inventor, Mr. Steger, nor prepared with his assistance, and disclose new and different elements from the utility patent application.  Since Coleman cannot meet its burden that the D'714 Patent is entitled to the priority date of the utility patent application, and there is no dispute that Coleman began selling the patented device more than a year before the D'714 Patent application, the D'714 Patent is invalid under 35 U.S.C. §102(b).

Hoping to avoid an adverse summary judgment, Coleman filed a motion for entry of judgment on non-infringement, requesting that the Court refrain from deciding the merits of Sport Dimension's claims.  (ECF No. 109.)   But Coleman's motion is not to provide assurance that Coleman will stop enforcing the D'714 Patent against Sport Dimension and its customers, but is instead a tactical ploy to prevent the Court from determining the issues of invalidity and infringement on the merits.  As discussed in Sport Dimension's opposition to Coleman's motion, these issues are ripe for determination now and there is no just reason for delay.  In fact, the Court's determination on the merits is essential to end this litigation, to avoid piecemeal litigation and appeals, and to provide certainty in the marketplace as to whether Coleman may or may not continue to enforce the D'714 patent.  For these reasons and the reasons that follow, Sport Dimension respectfully requests the Court grant summary judgment as to each of Sport Dimension's claims, declare the D'714 Patent invalid and not infringed, and dismiss Coleman's counterclaim.

## II.    SUMMARY OF RELEVANT FACTS[1]

### A.    The Parties In Suit

Sport Dimension is a Los Angeles-based company which distributes water-

---

[1] Sport Dimension's summary of facts references both material facts and non-material facts.  Non-material facts are provided for context only.  All material facts are denoted by reference to Sport Dimension's Statement of Uncontroverted Facts and Conclusions of Law ("SSF").

sports equipment, snow-sports equipment, and apparel nationwide.  (Mikulka Decl. ¶ 24, Ex. X.) Sport Dimension's products include child PFDs.[2]  Sport Dimension's products are sold under brands like Body Glove™, Yamaha™, and Sea-doo™.  (*Id.*)

Coleman is a company headquartered in Wichita, Kansas, and is owned by the commercial conglomerate Jarden Corporation, a Fortune 500 company.[3]  Coleman is known for its camping products such as coolers and lanterns.  (ECF No. 21 at 4.) Coleman, largely through its acquisition of Stearns, also manufactures and sells PFDs. Coleman owns the D'714 Patent, which claims the ornamental design for a PFD and names then-employee Ralph Steger as the inventor.  (SSF ¶ 1.)  The D'714 patent is embodied in Coleman's Child PFD known as the Puddle Jumper. (SSF ¶ 22.)  Coleman has been selling the Puddle Jumper since 2007.  (SSF ¶ 25.)

## B.   The D'714 Patent and File History

Circa 2006, Ralph Steger conceived the design for the PFD claimed in the D'714 Patent.  (SSF ¶2.)  On December 27, 2006, Coleman filed a utility patent application (Application No. 11/616,308) (the "utility patent application" or the "'308 Application") for an invention entitled "Personal Flotation Device," naming Ralph Steger as the inventor.[4]  (SSF ¶¶ 3, 4.) On December 17, 2008, the PTO issued a final rejection of the '308 Application, stating that the device was unpatentable as obvious over prior art.  (SSF ¶ 5.)  The patent examiner specifically cited the Kierner Patent, observing that the overall structure of the device disclosed in the '308 Application was the same what was disclosed in the Kierner Patent.  (SSF ¶ 6.).

After the '308 Application was rejected, on May 12, 2009, Coleman filed for a design patent (Application No. 29/336,952).  (SSF ¶ 11.)  The application for the design patent was also entitled, "Personal Floatation Device," and claims to be a continuation of the utility patent and identifies Ralph Steger as the inventor.  (SSF ¶¶

---

[2] *Id.*
[3] Coleman is within the umbrella of Jarden Corporation.
[4] The '308 Application contained four drawings:  (SSF ¶ 9.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

17, 18, 23.)  The drawings in '952 Figs. 1 and 8 diverge from the drawings in the '308 Application, and, in fact, '952 Figs. 2-7 were not disclosed in the '308 Application. (SSF ¶¶ 13, 14.)  On January 14, 2010, the PTO rejected the design patent application under 35 U.S.C. § 112 because the figures were indefinite and non-enabling.  (SSF ¶¶ 19.)  In response, Coleman submitted replacement drawings that amended the original drawings.[5]  (SSF ¶ 20.)  The drawings in D'714 Figs. 1 and 8 diverge from the drawings in '308 Figs. 1 and 2, and D'714 Figs. 2-7 were not disclosed in the '308 Application.  (SSF ¶¶ 13, 14.)

On September 14, 2010, the PTO issued the D'714 Patent.  (SSF ¶ 10.)  Ralph Steger is named as the inventor on the D'714 Patent.  (SSF ¶ 17.)

### C.   The Prior Art

The D'714 Patent claims priority to the '308 Application's filing date of December 27, 2006.  (SSF ¶24.)  Prior art is anything disclosing the invention or an obvious variant thereof dated on or before December 26, 2005.[6]  (SSF at Concl. of Law ¶ 6.)  The prior art includes the Kierner Patent, which was cited by the examiner during prosecution of the '308 Application.[7]  (SSF ¶ 6, 27.)  Also cited as prior art during examination of the '308 Application were U.S. Patent No. 4,692,125 (the "Wessman Patent") and U.S. Patent No. D56,815 ("Kelso Patent" SSF ¶¶ 29, 32.)  The Kelso reference was published on December 28, 1920.  (SSF ¶ 31.)  The Wessman reference was published on September 8, 1987.  (SSF ¶ 28.)  Another buoyancy device, sold by the company SwimEEZY, is the subject of a South African patent No. 96/0478 (the "Constan-Tatos Patent"), which was accepted on August 13, 1996.  (SSF ¶ 34.)  Finally, another device sold by the company Zoggs, has been commercially available for sale since at least July 28, 2003.  (SSF ¶ 38.)  Neither the Constan-Tatos

---

[5] The amended drawings comprised eight figures. (SSF ¶ 21.)
[6] If the D'714 Patent is not entitled to claim the priority date of the '308 application, prior art is anything dated prior to May 12, 2008.
[7] The patent examiner rejected the '308 Application as obvious under 35 U.S.C. §103(a), in view of the Kierner Patent.  (SSF ¶¶ 6, 7.)

1  Patent nor the Zoggs device were disclosed in the '308 Application or the application

2  for the D'714 Patent. (SSF ¶¶ 36, 38.)

3       **D.**    **This Court's Orders**

4       On January 29, 2015, the Court granted Sport Dimension's motion to exclude

5  Coleman's proffered expert Peter Bressler's testimony on the issue of functionality.[8]

6  The Court granted Sport Dimension's motion, finding that Mr. Bressler was not a

7  qualified as an expert in the pertinent art.[9]   On February 9, 2015, this Court entered its

8  Claim Construction Order.[10]   The Court construed the D'714 Patent as "the ornamental

9  design for a personal flotation device, as shown in Figures 1-8, except for the

10  armbands and side torso tapering, which are functional."[11]   The Court's construction

11  was based on its finding that the armbands and side torso tapering were functional and

12  therefore not protectable.[12]   On February 13, 2015, the Court granted Sport

13  Dimension's motion to exclude Coleman's proffered expert Mr. Bressler on the issue

14  of obviousness, finding Mr. Bressler was unqualified to offer his opinions on

15  obviousness or infringement.[13]

16  **III.**   **LEGAL STANDARD**

17       Federal Rule of Civil Procedure 56(c) is designed to resolve claims that can be

18  decided as a matter of law, avoid useless trials on undisputed issues of fact, and

19  eliminate factually unsupported claims or defenses.[14]   A factual dispute is not

20  "genuine" unless "the evidence is such that a reasonable jury could return a verdict for

21  the nonmoving party."[15]   Summary judgment is appropriate against a party who has

22  _____

23  [8] ECF No. 80.

    [9] ECF No. 80.

24  [10] ECF No. 91.

25  [11] ECF No. 91 at 23.

    [12] ECF No. 91 at 17-23.

26  [13] ECF No. 106.

27  [14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); Fed. R. Civ. P. 56(a).

    [15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Electric*

28  *Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16] Similarly, summary judgment is appropriate in favor of a party that meets its burden of proof.[17]  The Court may grant summary judgment on "each claim or defense – or the part of each claim or defense" on which it is sought.[18]

Because patents are presumed valid, Sport Dimension bears the initial burden of producing clear and convincing evidence that the D'714 Patent is invalid.[19]  Coleman then bears the burden of rebutting Sport Dimension's evidence by, for example, proving the existence of secondary considerations militating against a finding of obviousness under 35 U.S.C. § 103, presenting evidence that the D'714 Patent is not primarily functional, or proving that the Puddle Jumper was not marketed or sold before May 12, 2008.[20]

Coleman, however, bears the burden at trial of proving infringement.[21]  Coleman also bears the burden of demonstrating that the D'714 Patent is entitled to the earlier priority date of the '308 Application.[22]

For the reasons stated below, Sport Dimension has carried each of its burdens, while Coleman has not, and cannot, meet its burdens.  Sport Dimension respectfully requests the Court enter judgment in favor of Sport Dimension on each of its claims and against Coleman on its counterclaim.

---

[16] *Celotex*, 477 U.S. at 322; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).
[17] Fed. R. Civ. P. 56(a).
[18] *Id.*
[19] *Z Produx, Inc. v. Make-Up Cosmetics, Inc.*, No. CV 13-734-DDP, 2013 U.S. Dist. LEXIS 159256, *6 (C.D. Cal. Nov. 5, 2013) (citation omitted).
[20] *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014).
[21] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).
[22] *See Spencer v. Taco Bell Corp.*, No. 8:12-cv-387-T, 2013 U.S. Dist. LEXIS 142619, *12-13 (M.D. Fla. Oct. 2, 2013), *aff'd per curiam* 560 F. App'x 997 (Fed. Cir. 2014) (citing *Power Oasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303, 1305 (Fed. Cir. 2008)).

## IV.   LEGAL ARGUMENT

### A.   Sport Dimension's Child PFD Does Not Infringe the D'714 Patent

The overwhelming evidence demonstrates that Sport Dimension's Child PFD does not infringe the D'714 Patent. The evidence includes but is not limited to the side-by-side comparison of the devices as reflected in **Exhibit A** of the Mikulka Declaration which plainly reveal the substantial dissimilarities between the devices, and the testimony of Sport Dimension's experts on noninfringement Wayne Walters and the inventor Ralph Steger.[23] Even Coleman's own internal documents demonstrate the ornamental features of the Sport Dimension Child PFD make it plainly dissimilar from the D'714 Patent design.[24] The features that make the devices clearly dissimilar include, but are not limited to, the shoulder straps and the closed-back design on the Sport Dimension Child PFD, which give it the overall visual impression of a traditional life jacket rather than a strapless bra appearance of the D'714 Patent.

In addition, the Court's February 9, 2015 Claim Construction Order found "the armbands, the armband attachments, the shape of the armbands, the tapering of the armbands, and the tapering of the side torso are all elements that serve a functional rather than ornamental role in the D'714 patent."[25] To be clear, the devices are substantially dissimilar even without factoring out the functional elements, as reflected in the side-by-side comparison of **Exhibit AA, A-3**. When they are factored out, however, as seen in **Exhibit A-2,** the patented design, as construed, has no similarity whatsoever to the accused device. In response to the Court's Order, Coleman filed a motion for entry of judgment, acknowledging that it is "impossible" to establish infringement of the D'714 Patent.[26] Likewise, Coleman does not oppose this motion for summary judgment of non-infringement. Notwithstanding Coleman's concession,

---

[23] *See also* Exhibit AA of Mikulka Decl.; Mikulka Decl. ¶ 19-20, Exs. R-S (Steger and Walter reports).
[24] Mikulka Decl., Ex. W.
[25] ECF No. 91 at 23.
[26] ECF No. 109 at 1.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

1  Sport Dimension has provided the Court with a complete non-infringement analysis so

2  that the Court can make its own determination as to the issue of non-infringement.

3        **B.    Legal Standard For Design Patent Infringement**

4        In order to determine whether a design patent is infringed there are two-steps:

5  first, the court must construe the patent; second, the court compares the patented

6  design, as construed, to the accused device.[27]  The Court has already completed the

7  first step.[28]  As construed, the D'714 Patent comprises:

8              "The ornamental design for a personal flotation device, as

9              shown in Figures 1-8, except for the armbands and side torso

10             tapering, which are functional."[29]

11  In conducting the infringement analysis, the functional elements are factored out—

12  here, the armbands, armband tapering, attachment, and shape, and side torso tapering.[30]

13        The Court then applies the ordinary observer test.  Under this test, a design

14  patent is infringed only if "the ordinary observer, familiar with the prior art and

15  designs, would be deceived into believing that the accused product is the same as the

16  patented design."[31]  In some instances, the two designs "will be sufficiently distinct

17  that it will be clear without more that the patentee [can]not me[e]t its burden of

18  proving the two designs would appear 'substantially the same' to the ordinary

19  observer."[32]

20        The hypothetical ordinary observer is one who is both a consumer of the type of

21

22  [27] *Z Produx*, 2013 U.S. Dist. LEXIS 159256 at *8-9 (citing *Oddzon  Prods., Inc. v. Just

23  Toys, Inc.*, 122 F.3d 1396, 1404-05 (Fed. Cir. 1997).
    [28] ECF No. 91.

24  [29] ECF No. 91 at 23; *see also* Order, Dec. 2, 2014, ECF No. 59 at 11.

25  [30] *Richardson*, 597 F.3d at 1295 (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 429 F.3d 1365, 1372 (Fed. Cir. 2006)).

26  [31] *Z Produx*, 2013 U.S. Dist. LEXIS 159256 at *18 (quoting *Crocs, Inc. v. ITC*, 598

27  F.3d 1294, 1303 (Fed. Cir. 2010)); *see also Gorham Co. v. White*, 14 Wall. (81 U.S.) 511, 528 (1871).

28  [32] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

1  products involved and familiar with the prior art.[33]  Here, the ordinary observer is a

2  parent of a young child who is familiar with the prior art.[34]  The most important

3  considerations impacting the overall visual impression to the ordinary observer are

4  safety, security, and comfort.[35]  Other considerations include sun protection (or lack

5  thereof) and donning ease.[36]

6  In observing the devices at issue, the ordinary observer's frame of reference is

7  the "normal use" of the claimed design and accused product.[37]  Normal use includes,

8  primarily, the device being put on and worn by the user.[38]  The ordinary observer's

9  frame of reference may also be informed by the prior art.  Here, the prior art includes

10  wearable buoyancy devices, as shown in **Exhibit A-1**.[39]

### 1. Sport Dimension's Child PFD Is Plainly Dissimilar From The Design Of The D'714 Patent

12  Where two designs are sufficiently distinct, it will be clear without more that

13  there has been no infringement.[40]  Here, the D'714 Patent and the accused device are

---

[33] *See Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (Fed. Cir. 1933); *see also Fanimation, Inc. v. Dan's Fan City, Inc.*, No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526, *10 (S.D. Ind. Dec. 16, 2010).

[34] SSF ¶¶ 42, 43; *see also* Walters Inf. Rep. ¶ 16; *id.* ¶ 16 n.2 (alternatively, a purchaser familiar with PFDs of the type); Steger Rep. ¶ 16.

[35] SSF ¶¶ 44-46; *see also* Steger Rep. ¶ 17; Walters Inf. Rep. ¶¶ 17-19.

[36] SSF ¶ 47; *see also* Steger Rep. ¶ 32.

[37] *Int'l Seaway*, 589 F.3d at 1241.  Also, for purposes of the infringement analysis, "[w]hen no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988).

[38] SSF ¶ 48; *see also* Walters Inf. Rep. ¶¶ 19-21; *see also* Balistreri Rep. ¶ 18; Balistreri Rebuttal Rep. ¶ 8.

[39] The scope of prior art is art "from the same 'field of endeavor,'" as the subject patent, "even if it addresses a different problem, or, if not within the same field, if the reference is 'reasonably pertinent' to the particular problem with which the inventor [was] involved."  *Nano-Second Tech. Co. v. Dynaflex, Int'l*, 944 F. Supp. 2d 855, 861-62 (C.D. Cal. 2013) (citation omitted); Walters Inf. Rep. ¶¶ 47-50; Steger Rep. ¶ 27.

[40] *Egyptian Goddess*, 543 F.3d at 678.

plainly dissimilar.[41]  The overall visual impression of the Sport Dimension's Child PFD is that of a traditional life jacket.[42]  The product is comprised of a torso section with a hump-like curve in the center-front of the torso and t-shirt style shoulder straps that are sewn into the front and back of the torso.[43]  The rear view accentuates the traditional life jacket impression, as the torso section wraps around a wearer's back and its two ends cinch flush together.[44]

In plain contrast, the design of the D'714 Patent design has the overall visual impression of a strapless bra.[45]  The torso section covers only the front portion of a wearer's chest.[46]  The torso section does not have shoulder straps or any other t-shirt portion covering the back or shoulders of a wearer.[47]  The rear, top, and bottom views of the D'714 Patent reveal a torso having a rectangular shape and open back design.[48]  That is, the two sides of the torso section do not cinch flush together.[49]  Further, the side torso sections are not close (substantially smaller) in dimension to the front torso section.[50]  The accused device and D'714 Patent design are depicted below.[51]



---

[41] SSF ¶ 55Walters Inf. Rep. ¶¶ 33-42, 43-46; Steger Rep. ¶¶ 20-26.

[42] SSF ¶ 56, Steger Rep. ¶ 21; Walters Inf. Rep. ¶¶ 28, 32.

[43] SSF ¶ 57, Walters Inf. Rep. ¶ 28, 32.

[44] SSF ¶ 58, Walters Inf. Rep. ¶¶ 28, 32; Steger Rep. ¶ 21.

[45] SSF ¶ 60, Walters Inf. Rep. ¶¶ 27, 29, 33, 42; Steger Rep. ¶ 24.

[46] SSF ¶ 61, Walters Inf. Rep. ¶¶ 27, 29, 33, 42; Steger Rep. ¶ 24.

[47] SSF ¶ 558, Walters Inf. Rep. ¶¶ 27, 29, 33, 42; Steger Rep. ¶ 24.

[48] SSF ¶ 63, Walters Inf. Rep. ¶¶ 27, 29, 33, 42; Steger Rep. ¶ 24.

[49] SSF ¶ 64, Walters Inf. Rep. ¶¶ 27, 29, 33, 42; Steger Rep. ¶ 24.

[50] SSF ¶ 65,Walters Inf. Rep. ¶¶ 30, 38.

[51] *See* Mikulka Decl., Exs. A, AA; *see also* Walters Inf. Rep. ¶ 33

Evidencing the lack of confusion between the designs, a customer informed Coleman that ███████████████████████████████████████ ███████████████████████████.[52]  Further, Coleman's internal documents reveal that even Coleman admits that there are substantial differences.  In its internal power point presentation to the management, ██████████████████████████████ ██████████████████████████████████████████████████████ ████.[53]  Further, the ordinary observer would notice that the shoulder straps in Sport Dimension's Child PFD provide sun protection to upper torso, shoulders, and back, whereas the D'714 Patent is an open back design.[54] As the inventor Mr. Steger and Mr. Walters have stated, the D'714 Patent is distinctly a "minimalist" open back design, designed to keep the user cool in hot temperatures.[55] ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████████.[56]  To the discerning eye of the ordinary consumer, the shoulder straps on Sport Dimension's Child PFD make the device noticeably safer and have a better fit.[57] The visual contrast of safety and fit between the two devices is not merely hypothetical.  Based on Mr. Steger's testing, as reflected in **Exhibit A-3**, it is much easier for a wearer to slip out of the patented device than the accused device.[58]

The plain dissimilarities between the D'714 Patent design and the accused device are greater than the dissimilarities in cases where courts have granted summary judgment of noninfringement.[59]  For the reasons discussed, Sport Dimension requests

---

[52] SSF ¶ 83; Mikulka Decl., Ex. Y.
[53] SSF ¶ 70.
[54] SSF ¶ 62.
[55] SSF ¶ 63; *see also* Steger Rep. ¶ 20.
[56] SSF ¶¶ 47-9
[57] SSF ¶ 67; *see also* Walters Inf. Rep. ¶¶ 47-68; Steger Rep. ¶ 25].
[58] SSF ¶ 68; Steger Rep. ¶ 25; Mikulka Decl., **Ex. A-3.**
[59] *Volstar Techs., Inc. v. Amazon.com, Inc.*, No. 13 C 5570, 2014 U.S. Dist. LEXIS 1-2306, *7-10 (N.D. Ill. Jul. 28, 2014). *Harel v. K.K. Int'l Trading Corp.*, 994 F. Supp.

1 the Court grant summary judgment of noninfringement.[60]

### 2.   The D'714 Patent And Sport Dimension Child PFD Are Substantially Dissimilar In View Of the Prior Art

Where two devices are not plainly dissimilar, the prior art can serve as a useful contextual frame of reference.[61]  Here, each of the prior art disclose a torso section with armbands; none of the prior art references have shoulder straps or give the visual impression of a traditional life jacket style device.[62]  Thus, whereas the prior art and the patented design disclose one thing (a flotation device comprising a chest piece, armbands, and no shoulder straps), the accused design is something else (a flotation device with shoulder straps).[63]  In view of the substantial similarities between the patented design and the prior art, "the difference between the accused design and the patented design," the shoulder straps, "cannot be considered minor."[64]  The visual contrast between the accused product and the prior art (and the visual similarity between the D'714 Patent design and the prior art) are illustrated in **Exhibit A-4.**  In sum, against the backdrop of the prior art, no trier of fact could find that an ordinary observer would view the accused device for the patented design as substantially similar.  Consequently, summary judgment of noninfringement in favor of Sport Dimension is appropriate and should be granted.

### C.   The D'714 Patent is Invalid Because It Is Primarily Functional

Under 35 U.S.C. § 171, a design patent may be granted only for a "new, original and ornamental design."  If the patented design is primarily functional rather than

---

2d 276, 280 (E.D.N.Y. 2014) (holding "similar shape is not sufficient to demonstrate that an ordinary observer would confuse the two products, especially where there are other unmistakable differences in design."); *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*, 665 F. Supp. 2d 357, 362-63 (S.D.N.Y. 2009).

[60] Given plain dissimilarities, the Court does not need to consider the prior art.  *See Egyptian Goddess*, 543 F.3d at 678.

[61] *Egyptian Goddess*, 543 F.3d at 678; *see also Wing Shing*, 665 F. Supp. 2d at 367.

[62] SSF ¶ 65; *see* Walters Inf. Rep. ¶¶ 47-68; Steger Rep. ¶¶ 26-32.

[63] SSF ¶ 53, Walters Inf. Rep. ¶ 62; Steger Rep. ¶¶ 28-32.

[64] *Egyptian Goddess*, 543 F.3d at 683.

primarily ornamental, the patent is invalid.[65]  Courts have invalidated design patents for functionality where, like here, the design is primarily functional.[66]

In *Barofsky*, the Ninth Circuit affirmed an order granting summary judgment where a design patent was invalid for functionality.[67]  While observing a patent should not be invalidated if only one or more minor features are functional, it explained that invalidity finding was appropriate where—as here—a design patent's functional features are dominant "in the sense that they are chiefly relied upon as contributing to the over-all design the qualities of newness, originality, ornamentation and non-obviousness".[68]  In *Power Controls,* the Federal Circuit affirmed invalidity where the patent for a clam-shell style package, was "composed mainly of functional elements," and no convincing evidence that the patent was "primarily ornamental" was offered.[69]

Here, the Court has already issued a claim construction order finding that the D'714 Patent is composed of mainly functional elements.  Specifically, the Court found that the armbands, armband attachments, tapering of the armbands, and tapering of the side torso are all functional.[70]  This leaves little, if anything, that could possibly be ornamental, much less primarily ornamental.  Hence, as in *Barofsky* and *Power Controls*, because the functional features of the D'714 Patent are dominant, the design is primarily functional.  Moreover, Coleman has offered no evidence that the D'714 patent is "primarily ornamental," and the Court has excluded its expert on functionality for being unqualified.  Thus, given the Court's claim construction and the lack of rebuttal evidence, the D'714 patent should be rendered invalid for functionality.

---

[65] *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 238, 231 USPQ 774, 777 (Fed. Cir. 1986).
[66]  *Best Lock Corp. v. Ilco Unican Corp*., 94 F.3d 1563 (Fed. Cir. 1996).
[67] 396F.2d 340, 343 (9th Cir. 1968).
[68] *Id*.
[69] *Barofsky*, 806 F.2d 234 at 239.
[70] ECF No. 91.

### D.     The D'714 Patent Is Invalid As Obvious In View Of The Prior Art

Summary judgment of obviousness under 35 U.S.C. § 103 is appropriate if 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute and the moving party is entitled to judgment as a matter of law.[71]  Here, as demonstrated by Mr. Walters' unrebutted expert opinions, the testimony of the inventor himself, and the lack of expert or other rebuttable evidence, there is no genuine dispute of material fact and Sport Dimension is entitled to judgment as a matter of law that the D'714 Patent is obvious.

The "ultimate inquiry under § 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."[72]  Once obviousness is demonstrated, the burden shifts to the patentee to demonstrate nonobviousness by submitting evidence of secondary considerations, such as: commercial success, copying, and acceptance by others.[73]

The obviousness inquiry involves two steps: first, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"; second, "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design."[74]  In the first step, the court must both "discern the correct visual impression created by the patented design as a whole; and [] determine whether there is a single reference that creates 'basically the same' visual impression."[75]

---

[71] *MRC Innovations*, 747 F.3d at1331; *see also Petersen Mfg. Co. v. Central Purchasing, Inc*., 740 F.2d 1541, 1548 (Fed. Cir. 1984).

[72] *MRC Innovations*, 747 F.3d at 1331 (citation omitted).

[73] *See MRC Innovations*, 747 F.3d at 1335-36 (citing *Crocs*, 598 F.3d at 1311).

[74] *MRC Innovations*, 747 F.3d at 1331; *Durling v. Spectrum Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996) (internal quotations omitted).

[75] *Durling*, 101 F.3d at 103. The Court need give any particular articulation, it must simply make "clear . . . what it considered to be the relevant design characteristics of the [] patented design." *MRC Innovations*, 747 F.3d at 1332.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

### 1.    Mr. Walters' Unrebutted Opinions Establish The D'714 Patent Would Have Been Obvious To An Ordinary Designer Of PFDs.

The level of ordinary skill in the art is not disputed.[76]  This Court has already determined that to be qualified as an expert on the issue of obviousness an individual must be a designer with experience in the pertinent art (PFDs) or a substantially related field (wearable buoyancy devices).[77]  In light of the ordinary skill required, the Court excluded Colman's proffered expert, Mr. Peter Bressler.[78]  In contrast to Coleman's unqualified witness, Sport Dimension has presented expert Wayne Walters.  Mr. Walters has approximately 28 years of experience in the PFD industry and had designed or developed approximately 100 PFDs as of December 2006.[79]  Mr. Walters is an ordinary designer in the pertinent art of PFDs.[80]  Further, Mr. Walters was aware of the state of the art at the time of the conception in 2006.[81]

Sport Dimension's expert Mr. Walters has opined that to the ordinary designer of PFDs, the correct visual impression of the D'714 Patent a PFD comprising "a chest piece with an open back design, with armbands that attach to the sides of the chest piece and which are circular in shape and taper at the ends."[82]  Mr. Walters's description is corroborated by the patent examiner's description of the "overall structure" of the design of the device claimed in the '308 Application: "a personal flotation device . . . with a torso pad [], a right armband [] and a left armband" where "the armbands taper to be narrower under the armpits of the user" and an "attachment member that is proximate the user's back."[83]

---

[76] SSF ¶ 39.
[77] ECF No. 80 at 9.
[78] ECF No. 80 at 9-12.
[79] SSF ¶ 71; *see also* Walters Obv. Rep. ¶ 4 & Ex. B).
[80] SSF ¶ 72.
[81] SSF ¶ 73; *see also* Walters Obv. Rep. ¶ 4.)
[82] SSF ¶ 74; Walters Obv. Rep. ¶¶ 10, 13.
[83] SSF ¶ 7.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

### 2. The Primary Prior Art Reference, The Kierner Patent, Discloses Basically The Same Visual Impression As The D'714 Patent

The primary reference, the Kierner Patent, is basically the same as the D'714 Patent.[84]  Mr. Walters describes the Kierner Patent as comprising a swim aid "with a chest piece with open design, with armbands that attach to the sides of the chest piece and are circular in shape and taper at the ends."[85]  Mr. Walter's opinion that the D'714 Patent is obvious over the Kierner reference is corroborated by file history in which the PTO rejected the '308 Application as obvious, because "[i]t would have been obvious to a person of ordinary skill in the art at the time the invention was made to form the device of Kierner with a plurality of stacked floatation pads . . . that can be inherently folded in a circle . . . for improved flotation and comfort . . . ."[86]

The patent examiner's reference to the obviousness of using armbands with stacked flotation pads formed in a circle also illuminates the motivation of an ordinary designer in the art to create the design of the D'714 Patent.  As Mr. Walters explains: "[o]ne motivation for combining the characteristics of the various prior art references would have been to design a PFD capable of USCG approval, as opposed to serving as just a swimming aid."[87]  The Kierner Patent and the D'714 Patent are compared below.



---

[84] SSF ¶ 41; *see also* Walters Obv. Rep. ¶¶ 12-13.
[85] *See* Mikulka Decl. at **Ex. A-5, A-6.**  SSF ¶ 41; Walters Obv. Rep. ¶ 12.
[86] SSF ¶ 8.
[87] SSF ¶¶ 71-73; Walters Obv. Rep. ¶¶ 13, 20; SSF ¶ 6.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

### 3.    The Secondary Prior Art References Also Renders The D'714 Patent Obvious

Mr. Walters also identifies three additional prior art patents as secondary references to the primary Kierner Patent: the Wessman Patent, the Kelso Patent, and the Constan-Tatos Patent.[88, 89] The Wessman patent discloses a chest piece, with foam armbands which attach to the sides of the chest piece; suggests using a larger, more rectangular-shaped chest piece than the Kierner Patent; and suggests using foam, as opposed to air, to provide buoyancy.[90]   *See* **Exhibit A-7.**  Mr. Walters also identifies the Kelso Patent as a secondary reference.[91]  The Kelso Patent discloses a floatation device comprising a chest piece and armbands, where the chest piece is rectangular in shape when viewed from the front.[92]   *See* **Exhibit A-8.**  Additionally, Mr. Walters identifies the Constan-Tatos Patent as another secondary reference.[93]  The Constan-Tatos Patent was not disclosed to the examiner during prosecution of the D'714 Patent, and therefore was never considered.[94]  The Constan-Tatos Patent discloses a swimming aid comprised of fitted chest piece and two armbands.[95]   *See* **Exhibit A-9.**  The torso section of the Constan-Tatos Patent is larger in proportion than the torso section of the Kierner Patent[96]

Mr. Walters opines that an ordinary designer skilled in the art would have been motivated to combine the overall design of the Kierner Patent with elements of the Wessman, Kelso, and Constan-Tatos Patents to design a PFD having the same overall

---

[88] Walters Obv. Rep. ¶¶ 14-19.

[89] Since, neither the Constan-Tatos Patent nor Zogg device were disclosed to the examiner; Sport Dimension's burden can be more easily met.  *See Lindmann Maschinenfabrik, GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984).

[90] SSF ¶ 30; *see also* Walters Obv. Rep. ¶ 18.

[91] SSF ¶ 33; Walters Obv. Rep. ¶ 19.

[92] SSF ¶ 43; Walters Obv. Rep. ¶ 20.

[93] SSF ¶ 37; *see also* Walters Obv. Rep. ¶¶ 15-17.

[94] SSF ¶ 36; *see also* D'714 Patent File History.

[95] SSF ¶ 37; *see also* Walters Obv. Rep. ¶ 15.

[96] SSF ¶ 37; Walters Obv. Rep. ¶ 20.

1   visual impression the D'714 Patent.[97]  Mr. Walters opines that one motivation for

2   combining the characteristics of the various prior art references would have been to

3   design a PFD capable of USCG approval.[98]  For a PFD to be sold in the U.S., USCG is

4   required.[99]  Children are also often required to wear USCG approved PFDs while at

5   water parks or public pools.[100]

   **E.    The Inventor Admits That The D'714 Patent Design Is Obvious In Light of the Prior Art**

7       Coleman admits that the inventor Mr. Steger is the only person with knowledge

8   of the conception of the D'714 Patent.[101]  Significantly, Mr. Steger testified that the

9   D'714 Patent design was obvious in light of prior art and in fact, that the D'714 Patent

10  was *an "obvious copy"* of the Kierner Patent.

11       Mr. Steger testified



<hr>

[97] SSF ¶ 75; Walters Obv. Rep. ¶ 20.
[98] SSF ¶ 69; Walters Obv. Rep. ¶ 20.
[99] SSF ¶ 67; Walters Obv. Rep. ¶ 20.
[100] SSF ¶ 68; Walters Obv. Rep. ¶ 20.
[101] SSF ¶ 76.
[102] SSF ¶ 76.
[103] SSF ¶ 77; *see also* Mikulka Decl., **Ex. A-6.**  Steger Dep. Tr. at 107:1-11 ("



Klerner (Fig. 8)                    STEGER

### 1.   Coleman Agreed to Not Present Any Evidence of Secondary Considerations That Would Weigh In Favor Of Nonobviousness

Once obviousness is demonstrated, the burden shifts to the patentee to demonstrate nonobviousness by submitting evidence of secondary considerations, such as: commercial success, copying, and acceptance by others.[106]  Notably, Coleman has agreed it will not elicit evidence or present argument on secondary considerations.[107]  Given the unrebutted expert's opinions, the inventor testimony and evidence, summary judgment should be entered that the D'714 Patent is invalid for obviousness.

### F.   The D'714 Patent Is Invalid Under 35 U.S.C. §102(b) Because It Is Not Entitled To The Priority Date Of The Earlier Filed '308 Application

On December 27, 2006, Coleman filed the '308 Application seeking to protect the PFD that Mr. Steger invented.[108]  When the '308 Application was rejected by the PTO as obvious over prior art, Coleman devised a brand new strategy to obtain its desired monopoly over the field of PFDs with armbands.  On May 12, 2009, nearly two years after it began selling the Puddle Jumper in the U.S., it filed for a design patent.  The D'714 Patent application, however, contained new drawings that were

---

[104] SSF ¶ 79.

[105] *Id.*; SSF ¶ 82.

[106] *See MRC Innovations*, 747 F.3d at 1335-36 (citing *Crocs*, 598 F.3d at 1311).

[107] Mikulka Decl. ¶ 16, Ex. O.

[108] SSF ¶ 3.

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  neither prepared by the inventor, Mr. Steger, nor prepared with his assistance.  These
2  new drawings claimed new matter which was not included in the drawings in the '308
3  Application.  Because the D'714 Patent drawings claim new and different designs from
4  the '308 Application, the D'714 Patent is not entitled to the '308 Application's priority
5  date and is invalid under 35 U.S.C. §§ 102(b) and 103.

6          **1.     Coleman Cannot Meet Its Burden Of Demonstrating That The D'714 Patent Is Entitled To The Earlier Priority Date**

7        If a claimed design is "described in a printed publication . . . or in public use or
8  on sale in this country, more than one year prior to the date of the application for
9  patent . . . a patent is invalid under the on-sale bar.[109]  To be entitled to a parent's
10  effective filing date, a continuation must comply with the "written description
11  requirement" of 35 U.S.C. § 112.[110]  The test for sufficiency of the written description,
12  which is the same for either a design or a utility patent is "whether the disclosure of the
13  application relied upon reasonably conveys to those skilled in the art that the inventor
14  had possession of the claimed subject matter as of the filing date."[111]  Since the written
15  description of a design patent is provided in the drawings, "when an issue of priority
16  arises, one looks to the drawings of the earlier application for disclosure of the subject
17  matter claimed in the alter application."[112]

18        While not just any change in the design defeats a priority claim as a matter of
19  law, ***the party challenging the patent "need not identify significant differences"***
20  between the later- and earlier-filed applications.[113]  The "question is not whether a
21  claimed invention is an obvious variant of that which is disclosed in the specification;
22  [r]ather, a prior application itself must describe an invention, and do so in sufficient

23

24  _____

25  [109] 35 U.S.C. § 102(b); *see also Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at *6.
   [110] *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013) (citing 35 U.S.C. § 120).
26  [111] *Id.* (citation omitted).
27  [112] *Id.* (citing *Daniels*, 144 F.3d at 1456).
   [113] *Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at*19 (citation omitted) (emphasis
28  added).

detail . . . ."[114]  The written description requirement operates as a timing mechanism to ensure fair play in the presentation of claims after the original filing date and to guard against manipulation of that process by the patent applicant.[115]  As a prophylactic against manipulation, the written description requirement is strictly applied.  This is because if the requirement is not satisfied, the patentee is left no worse off than it would have been had there not be any prior application at all.

As the patentee, Coleman bears the burden of demonstrating the D'714 Patent is entitled to the earlier priority date of the '308 Application.[116]  Where, as here, a "descriptive matter" (a drawing in the context of design patents) is not actually disclosed in the earlier application, in order to claim priority to the earlier application, the patentee must demonstrate the earlier application "inherently disclose[s] the claimed element[s]."[117]  Importantly, where the earlier parent application is a utility patent application, the patentee cannot rely on the written claim language or descriptions to "expand []or contradict [] the drawings" in the design patent.[118]

---

[114] *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299,1306 (Fed. Cir. 2008) (citation omitted); *see also id.* (citing *Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987) (The question is not"whether one skilled in the art *might* be able to construct the patentee's device . . . . Rather it is a question whether the application necessarily discloses that particular device.'") (emphasis in original).

[115] *PowerOasis*, 522 F.3d at 1306.

[116] *Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at *12-13; *see also PowerOasis*, 522 F.3d at 1303, 1305. "Ordinarily, a patent is presumed valid. But 'in the absence of an interference or rejection which would require the [examiner] to make a determination of priority,' the burden shifts to the patentee to show the patent is entitled to the earlier date." *Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at *12-13 (quoting *PowerOasis*, 522 F.3d at 1303, 1305).

[117] *PowerOasis*, 522 F.3d at 1306-07 (citations omitted).

[118] *Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at *9-12 (citing *In re Salmon*, 705 F.2d 1579, 1581 (Fed. Cir. 1983); *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989)).  Unlike prosecution estoppel, "the written description question does not turn upon what has been disclaimed [or upon intent] but instead whether the original disclosure 'clearly allow[s] persons of or ordinary skill in the art to recognize that [the inventor] invented what is *claimed*." *Owens*, 710 F.3d at 1363 (citation omitted) (emphasis in original).

### 2.    Six Of The Eight Drawings In The D'714 Patent Were Not Disclosed At All In The '308 Application

The D'714 Patent contains eight figures, six of which are not found at all in the '308 Application.[119]  Specifically, D'714 Figs. 2-7 are not disclosed in the '308 Application.[120]  The D'714 Figures and '308 Figures are shown in the chart below. The missing figures are shown boxed in red.



Indeed, several significant design aspects of the absent drawings, such as the open back design, rectangular or u-shaped torso, and side profiles, were never disclosed in the '308 Application, and therefore, were not reasonably conveyed to the designer of ordinary skill in the art.  *See* **Exhibit A-10.**  *First*, D'714 Figs. 2 and 3 disclose an open-back design.[121]  Indeed, none of the '308 Figures disclose how the design of the back is configured.[122]  Hence, an ordinary designer would not have understood the '308 Application to disclose an open-back design for a PFD.  *Second*, D'714 Figs. 6 and 7 disclose a torso section that is rectangular or u-shaped.  The side torso sections meet the center torso section at a near perpendicular angle, and the center torso section is straight.  This rectangular or u-shaped design is not disclosed anywhere in the '308 Application.  In fact, to the extent '308 Fig. 4 is a top view, it discloses a different design than the design in D'714 Figs. 6 and 7.  *Third*, D'714 Figs. 5 and 6 disclose side profiles of the claimed design.  The '308 Application does not disclose any side views, rendering its side profile indefinite and indeterminable.

---

[119] SSF ¶¶ 12, 14.
[120] SSF ¶ 14.
[121] SSF ¶ 15.
[122] SSF ¶ 16.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

Moreover, the distinctive design feature of D'714 Figs. 5 and 6, which describe a gradually sweeping taper along the side torso sections, is not disclosed in the '308 Application.  Instead, '308 Figs. 2 and 3 describe a sharp, abrupt taper from the front torso to the side torso.

Any of these differences alone are sufficient to preclude the D'714 Patent from claiming priority to the '308 Application.[123]  *Owens* is instructive.[124]  There, the Federal Circuit found that by adding an additional bisecting line to the drawing, the later filed application claimed a new, trapezoidal shape on the face of the bottle that had not been previously claimed.[125]   The addition of the bisecting line that precluded the later-filed application from claiming priority to the parent application is far less dramatic a change than the non-disclosure of the open back design, the changed disclosure from an curved, elliptical central torso to a rectangular or u-shaped central torso, and the changed abrupt side torso tapering to gradual, sloping tapering.

### 3.    The Remaining Two Drawings In The D'714 Patent Contain Non-Immaterial Variations

In addition to the above-described differences, the drawings in D'714 Figs. 1 and 8 also disclose a different design than '308 Figs. 1 and 2.  There are two primary differences between the drawings: (1)  the armbands in '308 Fig. 2 are drawn as concentric circles, whereas the armbands in D'714 Fig. 1 are elliptically shaped; and (2) the armbands in D'714 Fig. 1 are connected to the torso section by a fabric member, whereas the armbands in the '308 Application are connected directly to the front of the torso section.  These differences are called out in **Exhibit A-11.**

These differences would not be immaterial to a designer skilled in the art.  For example, as Ms. Balistreri, Mr. Walters, and Mr. Steger have each opined, range of

---

[123] *See, e.g.*, *Owens*, 710 F.3d at 1367-68 ; *Salmon*, 705 F.2d at 1582; *Taco Bell*, 2013 U.S. Dist. LEXIS 142619 at *12-22.
[124] *Id.*; *see also Munchkin, Inc. & Toys "R" Us, Inc. v. Luv N' Care, Ltd*, Case IPR 2013-00072 (P.T.A.B. Apr. 21, 2014).
[125] *Owens*, 710 F.3d at 1363-68.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT

motion, secure fit, and comfort are primary design considerations.[126]  Moreover, even the inventor confirmed that the drawings in the D'714 Patent ██████████████████████████████ ████████████████████████████████████████[127]

Here, Coleman does not present any evidence that "one skilled in the art would recognize [there had been] such a disclosure," in the drawings of the earlier filed application.[128]  Therefore, Coleman cannot meet its burden of establishing the D'714 Patent is entitled to the priority date of the '308 Application.  Because the D'714 Patent is entitled to an effective filing date of May 12, 2009, and it is undisputed that Coleman sold the patented device over a year before this date, it is invalid under 35 U.S.C. § 102(b).

## V.   CONCLUSION

Sport Dimension respectfully asks that the Court grants its motion for summary judgment, declare the D'714 invalid and not infringed, and dismiss Coleman's counterclaim.

DATED:  March 2, 2015                STRADLING YOCCA CARLSON
                                       & RAUTH, P.C.


                                   By:  /s/Yuri Mikulka
                                        YURI MIKULKA
                                        SARAH S. BROOKS
                                        BRADLEY E. MARRETT
                                        Attorneys for Plaintiff
                                         SPORT DIMENSION, INC.

---

[126] Mikulka Decl., Ex. T at ¶¶ 13-19, 46-48; *id.*, Ex. U at ¶¶ 8-9, 22; *id.*, Ex. K at ¶ 20; *id.*, Ex. S at ¶¶ 17-19; *id.*, Ex. R at ¶ 17.

[127] Mikulka Decl., Ex. P, Steger Dep. Tr. at 175:13-177:5.

[128] *Id.* (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998)).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SPORT DIMENSION INC.'S MOTION FOR SUMMARY JUDGMENT